Patricia GILES, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. C04–2061.

United States District Court, N.D. Iowa, Eastern Division.

April 28, 2005.

Cynthia A. Rybolt, Legal Services Corp. of Iowa, Waterloo, IA, for Plaintiff.

Lawrence D. Kudej, US Attorney's Office, Cedar Rapids, IA, for Defendant.

**REVISED ORDER** [1]

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to briefs on the merits of this application for disability insurance benefits. On March 11, 2005, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(C). (Docket # 12). The final decision of the Commissioner of Social Security is reversed and this matter is remanded for award of benefits.

*PROCEDURAL BACKGROUND*

Plaintiff Patricia Giles applied for Title II Social Security benefits and Title XVI supplemental security income benefits on October 23, 2000, alleging an inability to work since October 23, 2000, due to chronic headaches, hyperthyroidism, arthritis, and hypertension. Ms. Giles' application was originally denied and was denied on reconsideration. A hearing before Administrative Law Judge (ALJ) John E. Sandbothe was held on October 9, 2003. In an opinion dated March 4, 2004, the ALJ denied benefits. On July 15, 2004, the Appeals Council denied Ms. Giles' request for review.

*FACTUAL BACKGROUND*

Ms. Giles' relevant medical history is set forth below:

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|------|------------------|---------------------------------------------------------|
| 9/20/00 | PCHC | S: Also complains of episodes of headache that usually come in clusters for a few days, headaches are frontal and usually associated with runny eyes and conjunctiva injection. Sometimes takes Tylenol with some relief. <br> A: Cluster headaches. (Tr. 198) |

---

**1.** The court's order dated April 26, 2005, did not contain all information intended. Accordingly, the court submits this revised order.

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 10/11/00 | PCHC—Dr. Deborah Johnson | S: Had written a script for Atenolol [on 9/28/00] which patient never picked up. (Tr. 195) |
| 10/23/00 | Allen Memorial Hospital—Dr. Steven Lamar, ER physician; Dr. Deborah Johnson, admitting physician | Presented to emergency room after passing out at work. Had an additional seizure-like episode in the emergency room and was not particularly post ictal afterwards, just a little confused for a few moments. Diagnosis: New onset of seizure activity; syncopal episode. The head computerized tomography was negative. Admitted to the hospital. Review of symptoms during history/physical include chronic episodes of dizziness, chronic headache—usually generalized and throbbing—no relief with Tylenol or Motrin. Assessment: syncopal episode with subsequent seizures as reported; hypertension, controlled, hyperthyroidism. Plan: She has an appointment at Iowa City. She had been referred there earlier in the month when seen by me for her hyperthyroidism for further management. (Tr. 157–160) |
| 10/23/00 | Allen Memorial Hospital—Dr. Greg Raecker | Procedure: CT Head WO Contrast Impression: Negative noncontrast CT imaging of brain. (Tr. 164–65) |
| 10/24/00 | Allen Memorial Hospital—Dr. Thomas Mulakkan, Consulting Physician | Consultation: History of hypertension, hyperthyroidism, chronic headaches, daily headaches. She does have chronic headaches for the past almost 15 years, daily headaches, mainly in the front temporal area and at times she does get aggressive headache which does cause some nausea and photophobia. Past medical history significant for headache, history of hyperthyroidism on mediation, planning to go to Iowa City for radioactive treatment, hypertension. Clinical Impression: General exam and neurological exam are unremarkable without any focal deficits. The patient possibly had an episode of change in mental status most likely due to cyncope, vasovagal episode. In addition, with her history of headaches, she may have a vertebrobasilar type of vascular headache during syncope. She does have chronic headache most likely due to tension, stress headache. However, vascular cause cannot be entirely excluded, underlying common migraine is a possibility. (Tr. 161–62) |
| 10/25/00 | Allen Memorial Hospital—Dr. Lawrence Liebscher | Normal MRI of the brain. (Tr. 164) |
| 10/30/00 | PCHC—Dr. Deborah Johnson | S: Followup visit from her recent hospitalization on 10/23/00 with syncopal episodes. Since discharge patient still complains of chronic headaches. She did not get any relief from Fioricet which she was on in the hospital. On discharge I placed her on Midrin and still no relief with this. She states that headaches are frontal and constantly aching with feeling of pressure behind the eyes. CT of head and MRI were negative for any space occupying lesion. A: Chronic headache, questionable atypical migraine verses related to her hypothyroidism. Patient states she does not feel she is able to go back to work at this time because of chronic headaches and dizziness, certainly when she returns to work she will not be able to operate machinery. Work excuse given until 10th this month. (Tr. 195) |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 1/25/01 | Convenient Care—Dr. Garold Moyer | S: Headache and pain behind her eyes. (Tr. 292) |
| 02/21/01 | PCHC—Dr. Kelly Cobb | S: Patient [has] history of hypothyroidism and cluster headaches who presents for complaint of pain in right leg and lower back. She states she just woke up like this morning and she does not recall any trauma to the area. She describes just a cramping aching sensation all the way down her leg. She states that her knee was swollen earlier this morning but this is resolved. She did not report any other arthritic complaints. No neck stiffness. No shooting pains. No limitation of use of her joints. O: Musculoskeletal examination, she has tenderness over the lower L-spine. There is no other evidence of trauma to the leg, the knee is without effusion, warmth or tenderness. Patient complains of pain wherever you touch the right leg. She also complains of pain in the right leg with straight leg raise and with flexion and extension of the knee. A: Thyroid disease. Patient has not followed up with endocrine. Musculoskeletal pain of unknown origin. (Tr. 191) |
| 03/22/01 | PCHC—Dr. Kelly Cobb | S: Patient ... presents complaining of pain in her right knee constantly. She states it feels like it is pulsing inside. She also states she has had some stiffness in her hands in the morning and also pains in her shoulders. O: Extremities, no edema. Musculoskeletal, there is no evidence of acute synovitis. She has good range of motion of her shoulders, elbows, wrists and digits in both hands. She has good range of motion of both knees. There does seem to be bony deformity of the right knee. There is mild tenderness lateral and medial to the patella. There is no warmth or effusion. No crepitus. A: Hypothyroidism. Many of her complaints could be explained by subtherapeutic dose of Synthroid. Knee pain. We will check a knee film as well as check for rheumatoid factor given her multiple joint complaints. (Tr. 190) |
| 03/27/01 | Allen Memorial Hospital—Dr. Stephen Frasier | Procedure: Right Knee Min 3 Views Findings: There is no joint effusion. There is no fracture or dislocation or bony destruction. Femorotibial joint is normal in thickness. No evidence for acute abnormality. Impression: Negative exam. (Tr. 222) |
| 03/28/01 | Well Woman Health— Questionnaire—Dr. Kelly Cobb | Answered "yes" to question: "Do you get regular exercise (20 min/day, 2–4X/wk)?" S: Patricia ... presents complaining of pains in the backs of her calves and her right knee constantly. The stiffness in the hands and shoulders has improved somewhat. O: Musculoskeletal examination, there is no effusion or erythemsa of the right knee. No tenderness. There is some mild tenderness upon palpation of the calf muscle posteriorly. A: Myalgias. We will check a CK today. This could also be related to her thyroid disease. She does not seem to have any active synovitis, may consider rheumatoid factor, a sed rate if these symptoms persist after her thyroid tests have normalized. (Tr. 185–86) |
| 6/01/01 | PCHC— Office Visit— Dr. Deborah Johnson | S: She was last seen by Dr. Cobb in March of this year. At that time, she complained of right knew pain and was placed on Celebrex. She presents today stating that her knee pain has remained constant and is sometimes in the hand. The right |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | | knew, she states, swells up and is swollen today. She has morning stiffness that lasts more than 30 minutes.<br>O: She has very good range of motion at the shoulder joints. No edema or erythema noted. She has no active synolitis of the fingers. Examination of the knee joints reveals mild edema of the right knee compared to the left. No palpable effusion. She has point tenderness along the lateral and medial joint lines on both knees, but more so on the right. There is no erythema or significant warmth. No crepitus on palpation. (Tr. 182) |
| 06/07/01 | Allen Memorial Hospital— Dr. Stephen Frazier | Procedure: Knee Standing AP<br>Reason for Exam: Bilateral knee pain<br>Findings: The knee joint spaces are symmetric bilaterally. No chondrocalcinosis is noted. No subchondral sclerosis or particular osterphytosis is seen. No spurring of the tibial spine.<br>Impression: Essentially negative AP bilateral standing knees. (Tr. 219) |
| 7/16/01 | PHCH— Office Visit | S: She still complains of chronic headaches. We had tried several things in the past including Midrin and Fioricet without much relief. I had given her referral to headache clinic in Iowa City but she did not follow up with this. She is requesting the referral be made again for follow up. (Tr. 181) |
| 8/22/01 | Allen Memorial Hospital— Dr. Lawrence Liebscher | Procedure: UMP Spine Lumbosacral Min 4 Views<br>Findings: Five nonrib bearing lumbar vertebral bodies are present. They are normal in height and alignment. The disc spaces are maintained. No evidence of spondylolysis or spondylolisthesis.<br>Impression: Normal LS spine series. (Tr. 233) |
| 8/22/01 | Allen Memorial Hospital— Dr. Lawrence Liebscher | Procedure: UMP Pelvis 1 or 2 Views<br>Findings: There is some hip joint space narrowing bilaterally. There is osteophyte formation and some sclerosis. These abnormalities are slightly worse on the left than right. SI joints are preserved. Bones are intact. There is a phlebolith in the left pelvis.<br>Impression: There is mild osteoarthritis of both hips, slightly worse on the left than right. No acute abnormality. (Tr. 234) |
| 9/27/01 | Disability Determination Services History & Physical— Dr. Kyle Christiason | S: When I asked her chief complaint for her reason for application for disability, she states she has problems with headaches. She has problems with migraine headaches for as long as she can remember. Typically cause nausea associated with photo and phonophobia.<br>O: She is able to get on and off the examination table without assistance. Again her gait is mildly antalgic on the right side, otherwise station is normal. She walks and gets around without assistance. No tenderness to palpation over the back or spinous processes.<br>A: Right knee swelling but no active synovitis identified on exam today. She has right tenderness to palpation diffusely over the knee joint but no specific area.<br>P: The patient states a subjective limitation of standing approximately one hour and sitting for the same duration of one hour before she develops pain mostly in the right knee but also somewhat in the back she states. She is able to walk for less than a mile any longer before she has to stop and have problems with pain. She generally avoids stooping, kneeling or crawling because of the knee discomfort, decreased range of motion and swelling. (Tr. 239) |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 10/15/01 | PCHC—Dr. Deborah ·Johnson | S: Patricia presents today complaining of bilateral knee pain and swelling times one week. States that when she does get flares the Ultram and the Diflunial that Dr. Palma has her on does not help with the pain.<br>O: She has mild swelling in both knees. No significant effusion appreciated. She has good range of motion. No crepitus appreciated. There is no pain on palpation of the medial or lateral joint lines.<br>A/P: Bilateral knee pain with swelling. Questionable flare of arthritis. |
| 10/26/01 | Physical RFC Assessment | Explanation of Symptoms: The claimant reports that she has pain in her knee and her legs hurt. She states it is like there is a fire in her knee. The lower part of her back and across the buttock also hurt. She states her pain is worse when she has a lot of movement. Cold, hot, and raining weather also increases her pain. She states she is constantly in pain. The claimant states she takes Ultram, Dolobid, and Depakote. She also uses hot baths and therapy to try and control her pain. The claimant reports that her hands swell and she can not bend her fingers. At her consultative exam the claimant could extend her fingers, make a fist, oppose the fingers, and had normal grip strength. The claimant also reports she does not do any lifting or bending because of her knee. The claimant also reports that she has headaches daily and sometimes they are worse than others. She states a typical headache lasts three weeks. She states she has to lay down in a dark quite [sic] room and keep very still. She states her headaches make her eyes water. The claimant reported that she goes to the emergency room with every headache. The claimant's hyperthyroidism is being treated with iodine treatment. In August 2001 her treating source adjusted her meds and she is doing better. The claimant reported on her activities of daily living form that she cooks daily, she does laundry twice a month, she cares for her two children, and she drives, and does the shopping. The claimant's credibility is somewhat eroded she states she has headaches for three weeks at a time and that she goes to the emergency room with every headache. Medical records do not support daily emergency room visits. The claimant also reports debilitating pain in her knees, yet x-rays are normal. (Tr. 247)<br>Explanation of opinion that claimants conclusions are not supported by the evidence in the file: The consultative exam doctor repeats in his report what the claimant told him she could do. She said she could stand one hour and |
| 11/01/01 | Covenant Clinic Psychiatry— Dan Ekstrom, Licensed Psychologist | Referral by Disability Determination Services for Mental Status Examination to be used, in part, to determine eligibility for disability.<br>Relevant Background: She reports gaining a considerable amount of weight (70 lbs in the last year), but wonders if it may be related to her thyroid condition.<br>Activities of Daily Living: Ms. Giles describes the daily activity primarily centering around her home and family. Her daily activities are largely a function as to how she feels on a given day. She typically gets up at between 5:30 and 6:00 am to help the children get ready for and leave for school. She oversees the children getting dressed and having breakfast before school. On which she refers to her "better days" she is capable of doing some cleaning and housework. She reports being capable of tolerating physical activity for up to one hour. On which she |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | | refers to as a "bad day", she spends much more time sitting or lying around the house and is not capable of doing much if any work. As a result, she relies on her 12–year–old daughter to do much of the housework and meal preparation that would typically be assumed by the mother. During the times she sits or lies around the house, she watches TV and takes frequent naps. The children come home from school at approximately 3:00 pm. She spends time with her children, reviews their day, and possibly prepares the meal. The applicant is still capable of doing grocery shopping although this is a task that is becoming more difficult and unpleasant. Diagnostic Impression: Axis III: Hypothyroidism, chronic headaches, high blood pressure, arthritis. Discussion/Recommendations: Her medical and emotional condition are causing significant impairment in her ability to function. Based on the current information, I offer the following impression as to her work-related abilities: 1. Remember and understand instructions, procedures, and locations—poor. 2. Carry out instructions, maintain attention, concentration, and pace—very poor. 3. Interact appropriately with supervisors, co-workers, and the public—fair. 4. Use good judgment and respond appropriately to changes in the workplace—fair. (Tr. 249–252) |
| 11/16/01 | Covenant Clinic—Dr. Garold Moyer | Ms. Giles complains of having severe headache lasting six days. (Tr. 289) S: This patient has been having headaches across her forehead and into her temples bilaterally for the last six days. The has had problems with headaches and they usually last for a number of days. She denies any numbness or tingling or lightheadedness or dizziness no weakness in her extremities. She has been nauseated but no vomiting. No photophobia. A: Recurrent headaches. (Tr. 290) |
| 12/20/01 | PCHC—Dr. Deborah Johnson | S: She does have a.m. headaches but this is not new. She has had chronic headache syndrome and has been evaluated for this in the past. Her other complaints is of bilateral knee pain. She is on Ultram and _____ by Dr. Palma which she states helps some but she still has significant pain in the knees during the day and in the mornings before going to work. O: She has mild swelling in both knees with no significant effusion appreciated. She has good range of motion, no crepitus. A/P: In regards to her knee pain, I have given her some Tylenol # 3 to use p.r.n. as needed. (Tr. 303) |
| 12/23/01 | Iowa Disability Determination Services Psychiatric Technique Review—Dee E. Wright, Ph.D. | The evidence in file would support moderate cognitive restrictions of function in this claimant's case. The claimant does exhibit variable attention and concentration. Subsequently, the claimant would have difficulty performing complex cognitive activity that would require prolonged attention to minute details and rapid shifts in alternating attention. despite these restrictions, the claimant is capable of sustaining sufficient concentration and attention to perform non complex, repetitive, and routine cognitive ability when she is interested in doing so. Her work history, her presentation during the most recent psychological evaluation, and her activities of daily living would corroborate this observation. (Tr. 273) |
| 01/10/02 | PCHC | Telephone call: Has taken two Tylenol # 3 today. No relief. "Head is banging." Approval given to go to E.R. (Tr. 302) |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 01/14/02 | Cedar Valley Medical Specialists— Dr. Claro Palma | Diagnoses:<br>1. Myalgias, rule out hypothyroid related myopathy.<br>2. Sciatica, rule out disc herniation.<br>3. Osteoarthritis of the peripheral joints.<br>Plan of treatment and/or recommendations:<br>1. I ordered an MIR of her lumbar spine. She had not completed this MRI scan, which I ordered during her last visit in August 2001. (Tr. 275, 432) |
| 01/16/02 | Allen Hospital— Dr. Greg Raecker | Procedure: UMP MR Spine Lumbar WO Contrast<br>Findings: Mild annular bulging and degenerative changes of the facets arguably result in minimal to mild compromise in the caliber of the central spinal canal and some narrowing of foramina at L4–5 and L5–S1. Otherwise, this exam is unremarkable. Lumbar vertebral body heights and disc spaces are maintained. There is no evidence for an intervertebral disc herniation.<br>Impression: Minimal to mild central spinal canal stenosis with narrowing of foramina at L4–5 and L5–S1 as described. Overall this is a rather unremarkable exam. No evidence for an intervertebral disc herniation. (Tr. 285, 448) |
| 01/23/02 | Convenient Care—Dr. Garold Moyer | Assessment: Migraine headache. (Tr. 287) |
| 02/06/02 | Covenant Clinic—Dr. Richard M. Warhol | She has been feeling very poorly for quite some time related to marked fatigue and rather severe headaches. She's taking a number of headache medications and requires parenteral medication at times for relief. It appears Ms. Giles has adequate thyroid hormone replacement. I don't think her headaches and fatigue are related to her thyroid replacement. (Tr. 286) |
| 02/19/02 | PCHC—Dr. Sharon Duclos | S: Numbness to left side from shoulder to toes that occurred day before. She has had some problems with low back pain. Recently underwent an MRI which should minimal to mild central spinal canal stenosis with narrowing of the foramina at L4–5 and L5–S1 but basically no impingement on the nerves. Patient states her pain was severe enough that she was just unable to work yesterday and today.<br>O: Neurologic, cranial nerves 2 through 12 are grossly intact. She has 5/5 strength of all extremities. She has a normal gait. Her musculoskeletal, left hip is tender to palpation all over. She has negative straight leg raises. She has 2+ deep tendon reflexes of the upper and lower extremities.<br>A: 1. Left hip pain with radiation down left leg. 2. Left hand numbness. (Tr. 299) |
| 02/26/02 | PCHC—Dr. Deborah Johnson | S: Follow-up visit. She had seen Dr. Duclos last week with complaints of numbness in left arm and leg. She reports that this had happened the day before she came in. She had woken up that morning with a severe headache associated with some blurred vision and nausea and vomiting. She had driven to work and when she reached the parking lot, she started experiencing some numbness in the left arm and leg. She states that one of her co-workers helped her out of a car and took her home, and she had to lay in a dark, quiet room until she felt better. Her symptoms resolved in 24 hours. She denied any further numbness or tingling. Her main complaint today is feeling achy all over. Her aches are mainly in the shoulders and in the pelvic girdle. |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | | O: She has pretty good range of motion at both shoulders, the elbow, and wrists. She has good range of motion at the hip joint. A/P: 1. Chronic pain syndrome. Rule out fibromyalgia or poly-myalgia rhermatica. 2. Polyarthalgia P: In regards to her symptoms of headache with some numbness in her extremities that she experienced about a week or so ago, I think the differential there is a complex migraine verses a TJA. Just knowing her history from chronic headaches, I think the former is more likely. (Tr. 298) |
| 03/14/02 | PCHC—Dr. Muhammed Pathan | Here with severe headache times one week. O: She appears to have a moderately severe headache. Trying to keep quiet. Otherwise unremarkable. Requesting excuse for yesterday and today. A: Headache. (Tr. 295) |
| 03/19/02 | PCHC—Dr. Deborah Johnson | S: Patricia presents today complaining of a headache times two weeks. She has seen Dr. Pathan sometime last week for the same and was given a Toradol shot which she states did not help. She also reports being seen at Convenient Care in the past and was given the same shot with some Vistaril without any relief. I had called in some Fioricet for her which she states she had a reaction to. States that made her very nervous and had heavy sweating. Her headaches are frontal and pounding, associated with photophobia and sometimes nausea. She denies any neck stiffness. She has a history of chronic headaches. I had given her a referral in the past to the headache clinic in Iowa City, but I do not think she ever made that appointment. She had an MRI of her head back in the later part of 2000 during a hospitalization and that was negative. A/P: Headache syndrome, most probably migraine headaches. Referral was given to the headache clinic in Iowa City. I have also requested an MRI and an MRA of her brain. (Tr. 294) |
| 05/09/02 | Physical Residual Functional Capacity Assessment— Dr. Chrystalla Daly | Primary diagnosis: mild osteoarthritis, hips; mild central spinal canal stenosis, L4–5 and L5–S1. Secondary diagnosis: hypothy-roidism; hypertension. Explanation of Exertional Limitations: Claimant alleges pain and aches in many parts of her body, to include knees, shoulder, wrists, hands, and back. X-rays of lumbar spine (8–01) and knees (6–01) are negative for arthritic changes. X-ray of hips on 8–01 shows mild osteoarthritis. MRI on 1–02 shows minimal central canal stenosis of L4–5 and L5–S1 without nerve impinge-ment and the comment by the radiologist was "... overall a rather unremarkable exam." There are no x-rays in the file for the hand/wrists or shoulder.... There are multiple internal inconsistencies in the record and there is no firm diagnosis established for symptoms. Dr. Palma does document the pain of the shoulder, feet and knees and swelling of the wrists/hands, knees and feet, but finds normal range of motion and 14 positive tender points on 6–01 with the diagnosis of arthralgias, myalgias, hypothyroidism, and feet swelling. On 8–01 he diagnosed sciati-ca, OA and myalgias due to hypothyroidism. Exam was signifi-cant for straight leg raising bilaterally to 75 degrees, spasm of the neck and trapezius muscles, swelling of the knees, wrists/hands, crepitus and pain of the knees and normal ranges of motion. There is no MRI evidence for sciatica, no x-ray evidence for OA of the wrists/hands, back or shoulder and hypothyroidism is now managed by thyroid hormone replacement. CE of 9–01 did find decreased range of motion of right hip and right knee, slight swelling of the right knee but no evidence of synovitis, |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | | normal station and slightly antalgic gait on the right. Claimant was able to squat, heel and toe walk, had 5/5 lower extremity strength, 4/5 upper extremity strength and the ability to oppose fingers, make a fist and extend hand. Treating sources at Peoples Clinic saw claimant from 2–01 to 12–01 for various musculoskeletal pains but offer no diagnosis. The claimant's allegations of severity of limitations based on the musculoskeletal symptoms are out of proportion to the findings and seem inconsistent with the caring of two children, ages 5 and 13. She does state that the older child helps with household chores and cleaning. Claimant states that she never did dishes, changed, sheets, vacuums, sweeps, takes out trash. This seems inconsistent with the caring of two children. Also, there is no basis on which to assess function since she states she basically sits during the day or sleeps, either because of pain or side effects from medication. This is inconsistent with the supervision of children, especially a 4–year old, which is the age of the youngest child a year ago. Claimant states she has trouble from the time she gets up and does no house cleaning, yard work, or exercises, but states she can walk no longer than an hour without being in severe pain. Explanation of Symptoms: Claimant alleges daily, chronic headaches that last from 2–3 weeks to months that keep her from doing anything (no work, no eating) except laying down. Description of headaches are consistent with migraines and multiple medications have been tried, allegedly without relief. Claimant states she needs medical attention very often and goes to urgent care monthly whenever headaches are severe. Review of MER reveals visits did occur from 9–00 to 3–02 (14 visits) and 4 of which resulted in IM injections for relief of pain. The frequency of visits in MER is inconsistent with the number of alleged visits. Claimant was referred to UIHC headache clinic and it is unknown whether she has attended. (Tr. 319–325) |
| 5/09/02 | Allen Hospital—Dr. N. Selvaraj | Physician's Orders: Patient does not recollect taking Depakote before. If this is true, then start 250 mg po bid x2 weeks & ↑ to 500 mg bid. If depakote already tried then start Topamax.... (Tr. 363) |
| 5/09/02 | Cedar Valley Medical Specialists—Dr. Claro Palma | Letter to Dr. Johnson Diagnoses: 1. Degenerative spine arthritis with sciatica, but no evidence of disc herniation. 2. Osteoarthritis of the peripheral joints, mild. 3. Diffuse Myalgias secondary to hypothyroidism. (Tr. 424) |
| 5/21/02 | Iowa Disability Determination Services—Dr. Herbert Notch, Ph.D. | Medical Consultant Review Summary: A functional assessment indicates the claimant is able to understand and remember tasks and instructions of a simple nature. She has sufficient concentration and attention to perform simple repetitive activities. The claimant is able to interact appropriately with supervisors, coworkers and the public. She is able to use fair judgment, and handle changes at work-like activities. Claimant allegations are credible and medical and non-medical evidence is consistent. (Tr. 344) |
| 8/08/02 | Allen Memorial Hospital—Dr. Driss Cammoun | Procedure: CT of the head without contrast Findings and Impression: Head CT demonstrates normal ventricular system and sulci. There is no midline shift. No intracranial hemorrhage. No evidence for extra acial fluid collection. There is small lacunar infarct involving the genu of the left internal capsule. Otherwise examination is unremarkable. No evidence for acute hemorrhage. (Tr. 404) |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| 8/9/02 | Allen Memorial Hospital— Dr. Deborah Johnson | History & Physical: Assessment—1. Intractable migraine headaches. The patient has had workup for this in the past and has seen two neurologists. She has been difficult to control and has not had any response from Amerge, narcotics, NSAIDs, Fioricet, Elavil, or Depakote. Currently she is on beta blocker. We will place her on a Demerol pump and will ask neurology to evaluate. 2. Questionable lacunar infarct. We will pursue stroke workup including a sedimentation rate. (Tr. 349–50) |
| 8/9/02 | Allen Memorial Hospital— Dr. Selvaraj Nithianandam | Consultation History of Illness: Past medical history of chronic migraine headaches, which over the last few months have become chronic daily headaches. Her headaches are described as bioccipital and bifrontal headaches, which are present almost constantly throughout the day. She has a mild headache throughout the day and then has severe headaches once or twice a month. Although the patient does not recollect taking Depakote in the past, Dr. Johnson's notes indicates that she was on Depakote at some point. She also frequents the local hospital emergency rooms at least twice a month for parenteral pain medications. Impression and Recommendation: She has a prior history of migraines, but these have become more troublesome in the recent past. I would start by using Depakote if the patient has not been tried on Depakote in the past ... If the patient has tried on Depakote before and it failed, then the only other option I could think of right now is Topamax. (Tr. 351–53) |
| 8/10/02 | Allen Memorial Hospital | Progress Notes: 2000 Denied pain or need. Took telemetry unit off and refuses to wear. Wants to take pain pills and DC the i.v. 0830 Requests IV's be taken out. 0830 Pt. refused to take Depakote. States med will make her hair fall out. States does not take furosemide daily at home. Agreeable to take does now. (Tr. 386) |
| 8/12/02 | Allen Memorial Hospital— Dr. Deborah Johnson | Discharge Summary: History of Present Illness: This patient is a 38–year–old female with a past medical history significant for chronic migraine headaches and hypothyroidism who presented to the emergency room with complaints of headache and weakness in her legs. The patient has headaches almost on a daily basis, but states that they were worse several days prior to admission. The headaches were associated with photophobia, nausea, dizziness and some ringing in the ear. On the day of admission, she developed some numbness on the right side of the face and weakness in the legs. She reported falling at home because her legs gave out on her. In the emergency room, she had a CT scan of the head which showed a possible small left lacunar infarct. Hospital Course: She was seen by neurology, Dr. Selvaraj, who did not feel that she had a stroke. He did not see any infarct on the CT scan. For her migraine headaches, he recommended trying Depakote or Topamax. The patient was tried on Depakote in the past and refused to take it any further because she had read that it can cause some hair loss. (Tr. 345–46) |
| 8/12/02 | Allen Hospital— Dr. Deborah Johnson | Physician's Orders: Pt does not wish to continue Depakote for fear of hair loss, will use Topamax instead. (Tr. 361) |
| 8/19/02 | PCHC—Dr. Deborah | S: Follow-up visit from her recent hospitalization. She was hospitalized with headaches and some weakness. CT scan of the |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | Johnson | head had shown a small left sided lacunar infarct. However she was seen by Dr. Salvarage who did not see any signs of infarct on the CT scan ... She states that her headaches are a little better on these medications but she still has daily headaches. A/P: 1. Refractory migraine headaches ... I have encouraged her to try and make the necessary changes with her insurance so that she can be seen at the headache clinic in Iowa City. 2. Possible CVA with small lacunar infarct on CT scan. (Tr. 508) |
| 8/27/02 | Cedar Valley Medical Specialists— Dr. Ivo Bekavac | Impression: Based upon history, physical, and neurological examination, I believe headaches are due to Chiari I malformation. Neurological examination is normal. (Tr. 415–16) |
| 8/28/02 | Allen Memorial Hospital | Principal Diagnosis: Intractable Migraine Headache Secondary Diagnoses: Hypothyroidism; Tobacco Abuse; Htn (Tr. 345) |
| 9/12/02 | Dr. Claro Palma | Notes from exam: No warmth or knee effusion, tenderness over the (illegible) of both knees. (Tr. 422) Letter to Dr. Johnson Plan of treatment/recommendations: 2. To investigate knee pain further, I ordered an MRI of the knees. If these are negative, I will defer any further evaluation, as I have no other explanation for her knee pain. She has some mild osteoarthritis only. (Tr. 417) |
| 9/12/02 | PCHC | Charting: Palma called—negative work up so far. Cannot find an explanation for her pain. Pt. unhappy et con't to c/o knee et leg swelling. (Tr. 509) |
| 9/18/02 | Allen Memorial Hospital— Dr. Greg Raecker | Procedure: Left UMP MR Knee WO Contrast Reason for Exam: Bilateral knee pain & swelling. No known injury, no surgery. Findings: There is no evidence for meniscal tear. ACL and PCL intact. Medial and lateral collateral ligaments intact. Minimal joint effusion. No marrow signal abnormalities in distal femur or proximal tibia. Impression: Minimal effusion. No evidence for meniscal tear. Supporting ligaments of knee intact. (Tr. 446) |
| 9/18/02 | Allen Memorial Hospital— Dr. Greg Raecker | Procedure: Right UMP MR Knee WO Contrast Reason for Exam: Bilateral knee pain & swelling. No known injury, no surgery. Findings: There is no evidence for meniscal tear. ACL and PCL intact. Integrity of medial and lateral collateral ligaments maintained. Small joint effusion. No marrow signal abnormalities in distal femur or proximal tibia. Impression: Small joint effusion. Otherwise negative. (Tr. 447) |
| 10/22/02 | PCHC | Pt. called concerned that neurology HA clinic at UIHC does not have appt. until 4/03. (Tr. 505) |
| 10/31/02 | PCHC—Dr. Deborah Johnson | S: In terms of her headaches, she is still waiting for a call from Iowa City to be seen by the neurologist and neurosurgeon. Her insurance did approve this referral. (Tr. 503) |
| 11/12/02 | Covenant Medical Center—Dr. Gayathry Inamdar | Diagnosis: Lumbar degenerative joint disease of the spine, bilateral sacroilitis Procedure Bilateral L4–5, L5–S1 facet joint, bilateral SI joint injection (Tr. 449) |
| 11/20/02 | Covenant Medical Center—Dr. | Test: Hip 2 Vws Lt. Reason for test: Left hip, left hip and leg pain Left Hip AP Oblique: Normal Study. (Tr. 455) |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | Lawrence Furlong | |
| 12/19/02 | PCHC—Dr. Deborah Johnson | S: The patient reports she was also seen in Iowa City by a neurologist in November for chronic headaches ... She states he felt she did not need to have any surgical procedure for her Arnold Chiari malformation. He feels that her headaches are chronic migraines and states that he or myself will have to find a medication that will help to control her headaches. A/P: Chronic, daily headaches. (Tr. 500) |
| 12/30/02 | PCHC—Dr. Deborah Johnson | S: Since our last visit she has been given a trial of Imitrex. She feels that it helps somewhat but she still has the daily headaches. (Tr. 499) |
| 1/21/03 | PCHC—Dr. Deborah Johnson | S: Patient presents today complaining of left sided neck, shoulder, and arm pain times one week.... She was seen in the Er at Allen on the 18th and had an x-ray done of the left shoulder which showed some degenerative change of the AC joints, otherwise it was negative. O: She is quite tender over the deltoid bursa. She also has tenderness over the glenohumeral joint itself and the acromioclavicular joint. She has a lot of muscle tenderness over the left sized trapezius. She has good flexion and extension of the neck but she experiences discomfort on rotation to the right. A/P: 1. Acute left shoulder pain, probable bursitis.... A toradol shot was given today. (Tr. 498) |
| 1/23/03 | PCHC—Dr. Deborah Johnson | S: This patient presents today still complaining of left shoulder and arm pain. She does not feel that the Vicodin is helping with the pain. O: She has moderate tenderness on palpation of the left glenohumeral joint and tenderness of the biceps muscle to about the mid point. During exam, she complains that her biceps muscle feels as though it is tied up in a ball. She had much discomfort with any type of movement. A/P: Continued left shoulder and arm pain. Referral given for an MRI of that shoulder and also of the upper arm to the level of the mid biceps to rule out any torn ligament, tendon or muscle. Referral also given to ortho for further evaluation. Percodan given for pain. I warned her that it can cause drowsiness. (Tr. 497) |
| 1/30/03 | Allen Memorial Hospital—Dr. Greg Raecker | Exam: Left UMP MR Shoulder WO Contrast Findings: Spurring/capsular hypertrophy, AC joint. This causing at least mild impingement upon musculotendinous junction of supraspinatus. Increased signal within supraspinatus at this level. Supraspinatus tendon intact and not retracted. Subacromial/subdeltoid fat plane preserved. No abnormal fluid beneath the acromion. No marrow signal abnormalities, proximal humerus. Impression: AC joint spurring/capsular hypertrophy with at least mild impingement upon supraspinatus. Adjacent supraspinatus tendinitis. Supraspinatus tendon intact. (Tr. 510) |
| 3/19/03 | PCHC—Dr. Deborah Johnson | S: Her left shoulder is much better after seeing Dr. Crouse and having an injection done ... She reports that her headaches are a little better. The Imitrex helps dull the headache for an hour or two after she takes it. A/P: 1. Migraine headaches. (Tr. 495–96) |
| 3/26/03 | Allen Memorial Hospital—Dr. | Procedure: MRI of brain without contrast. Findings: Nonspecific abnormal signal from the mastoid on the right noted consistent with right mastoiditis. |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | Cammoun Driss | Impression: Chiari I malformation with tonsillar ectopia extending below the foramen magnum by about 1 cm. Very mild sinus disease.<br>Note: Previous exam was obtained dated 10–25–00 and shows no significant interval change. (Tr. 516, 517) |
| 4/29/03 | PCHC—Dr. Deborah Johnson | Problem List: Migraine headaches, Grave's disease, status post radio-iodine therapy, now with hypothyroidism, osteoarthritis of peripheral joints, mild spinal stenosis, seasonal allergies.<br>S: This patient presents today complaining of muscle soreness all over times about three to four days. She denies any pain in the joints. She has a lot of soreness and muscle tightness around the neck and over the trapezius over the shoulders, in the muscles of the upper arms, the thighs and lower legs.... She denies any weakness in the arms or the legs.... Her other concern was to get a referral to Iowa City for inpatient admission. She will be going there on the 6th of next month under the care of Dr. Geweke for a trial of D.H.E. and Thorazine for her migraine headaches.<br>O: No swelling noted of the hand, wrist, elbow, shoulder, knee or ankle joints. She has good range of motion at the above-mentioned joints. She has some tenderness and tightness on palpation over the trapezius muscles at the base of the neck, triceps and biceps muscles, muscles in the thigh and also in the calf. Homan's sign is negative. She has no lower extremity edema. Strength was 5/5 bilaterally, both proximally and distally in the upper and lower extremities.<br>A/P: 1. Generalized myalgias, etiology at this time questionable. 2. Chronic headaches. Referral was given for the inpatient treatment that is scheduled for the 6th of next month. I will dictate a letter to Coventry to try to get approval for this. (Tr. 494) |
| 5/2/03 & 5/5/03 | PCHC | 5/2/03—Call from patient's insurance company re: I.C. appt.—Medical Director denied it.<br>5/5/03—Called & left message with pt's daughter letting her know her insurance denied admission to UIHC & call with questions. (Tr. 492) |
| 6/06/03 | PCHC—Dr. Amarnath Kathresal | S: This is a lady who has come in with complaints of left sided neck pain that has been there since this morning, it hurts when she moves her back. She has noticed a small lump in that area.<br>O: On physical exam she has a small lymph node that is palpable and there is significant tenderness in the adjoining muscles on the left side of the neck that extends onto the shoulder.<br>A/P: Muscle spasm. I asked her to take Flexeral and sent her for physical therapy. (Tr. 490) |
| 7/17/03 | PCHC—Dr. Amarnath Kathresal | S: Continued pain in her shoulder area. She says this has been bothering her quite a bit. She did not go for physical therapy the last time. The pain is essentially in the shoulder, not much in the neck.<br>O: On physical exam she has some tenderness over the trapezius muscles bilaterally. She has some diffuse low back tenderness too.<br>A/P: she has upper back pain and shoulder pain that is muscular.... I will also send her for physical therapy as symptoms have been going on for so long. (Tr. 490) |
| 08/11/03 | PCHC—Dr. Deborah Johnson | S: Patricia presents today with continued complaints of pain into her left shoulder, below the right shoulder blade, and also in the lower back X about one month. The pain across the left shoulder |

| DATE | MEDICAL PROVIDER | DIAGNOSIS, PROCEDURE, TREATMENT, FINDINGS, NOTES, ETC. |
|---|---|---|
| | | started in the neck but the neck pain has resolved. She denies any pain in the shoulder joint itself or with movement of the shoulder joint. She also has a feeling of muscle tightness below the right shoulder blade. She has had two therapy episodes on this shoulder and does not feel that it has helped so far. She has been taking Flexeril and ibuprofen and doesn't feel that has really helped. The lower back pain is in the lumbar region and radiates down her left leg. She has some numbness in the calf of the left leg. She feels that his lower back pain has gotten worse, she rates it as an 8/10 on a pain scale. |
| | | O:. No edema or erythema noted of the left shoulder. She has mild to moderate tenderness over the trapezius muscle on the left side. She has good range of motion at the shoulder joint, no tenderness over the glenohumeral or acromioclavicular joints. There is some tenderness in the paraspinal muscles below the right scapula. She has mild tenderness on palpation of the lumbosacral spine. Straight leg raise was negative on both sides. Strength is 5/5 bilaterally in both upper and lower extremities. Reflexes are brisk. Gross and find sensation intact in the lower extremities. |
| | | A/P: 1. Lower back pain with radiculopathy.... The pain in the left shoulder and below the right shoulder blade appears to by myofascial pain. She will continue with physical therapy. (Tr. 488) |

In the hearing before the ALJ, Ms. Giles testified that she had completed high school and one year of college. (Tr. 40). She last worked in 2001 in food service at Central School in Waterloo. (Tr. 40). Her employment there was terminated because she missed too many days of work due to her migraine headaches. (Tr. 40). Ms. Giles testified that she first started having headaches in about 1985, when she had a bad fall. (Tr. 41). She testified that she has headaches every day, severe headaches once or twice a month. (Tr. 42, 56–57). When she is experiencing a severe headache, she does nothing but lie still and go to the emergency room for a shot. (Tr. 42). The severe headaches make her nauseous and have caused her to black out. (Tr. 42). The medications Ms. Giles takes for her headaches make her drowsy, but have not helped in any manner. (Tr. 42–43, 57). After taking the medication, which she does twice a day, she has to lie down for a couple hours. (Tr. 43). Ms. Giles testified that she her insurance would not cover the intensive treatment in Iowa City, as suggested by one of her treating doctors, and that she could not afford to pay for the treatment herself. (Tr. 45). Ms. Giles testified that she went to the emergency room for her headaches about once a month, but her insurance company started getting on her about going there and told her to go to Convenient Care or go back to People's Clinic instead. (Tr. 56, 57).

With respect to other physical problems, Ms. Giles testified that she has back problems, stenosis, thyroid problems, her right knee stays swollen, her left ankle is currently swollen, and her left shoulder gives her problems as well. (Tr. 45). In terms of her ability to do things, Ms. Giles testified that her 14 year-old daughter helps out a whole lot, and that the 14 year-old daughter helps the seven year-old daugh-

ter with her homework when Ms. Giles is having a bad migraine headache. (Tr. 46). Ms. Giles testified that she can sit for about an hour before she has to get up and move around, she can stand for about an hour at a time, she can walk for about an hour before she would have to stop, and that she has to lay down in order to get relief. (Tr. 47). The medications she takes for her back pain make her vomit and they knock her out, put her to sleep. (Tr. 48). Ms. Giles testified that she had 12 injections in her back for the pain, but it did not help. (Tr. 49-50).

Regarding her daily activities, Ms. Giles testified that her 14 year-old daughter does the housework. (Tr. 51). When she's not having a migraine, Ms. Giles does some cooking. (Tr. 51-52). She also does the laundry, but must sit down to do it. (Tr. 52). Ms. Giles further testified that she makes sure that her children go to school every day and that she goes to their school activities if she is not having a migraine. (Tr. 55).

Ms. Giles testified that her weight is up about 40 pounds over the last three or four years. (Tr. 54). She attributed her weight gain to the medications she takes. (Tr. 54). Ms. Giles took care of her ailing mother from 1989 until 1997 when her mother passed away. (Tr. 55).

When questioned by the ALJ, the vocational expert testified that two or more absences per month and two or more breaks during the work day on an unscheduled basis for about a half an hour would preclude competitive employment for Ms. Giles. (Tr. 62). When questioned by Ms. Giles' attorney, the vocational expert testified that, assuming that Ms. Giles' ability to carry out instructions, maintain attention and concentration and pace are very poor, meaning that she was not able to do so on a consistent basis, then Ms. Giles would be precluded from any employment. (Tr. 62).

## CONCLUSIONS OF LAW

### Scope of Review

In order for the court to affirm the Administrative Law Judge's (ALJ) findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. *See Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir.1992); *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989). Substantial evidence is more than a mere scintilla. It means relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1997); *Cruse*, 867 F.2d at 1184; *Taylor v. Bowen*, 805 F.2d 329, 331 (8th Cir.1986). The court must take into account evidence which fairly detracts from the ALJ's findings. *Cruse*, 867 F.2d at 1184; *Hall v. Bowen*, 830 F.2d 906, 911 (8th Cir.1987). Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse*, 867 F.2d at 1184 (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen*, 867 F.2d 1121, 1124 (8th Cir.1989); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

### ALJ's Determination of Disability

Determining whether a claimant is disabled is evaluated by a five-step process. *See* 20 C.F.R. § 404.1520(a)-(f); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The five steps are:

(1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.

(2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.

(3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.

(4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.

(5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.

*Trenary v. Bowen*, 898 F.2d 1361, 1364 n. 3 (8th Cir.1990) (citing *Bowen v. Yuckert*, 482 U.S. at 140–42, 107 S.Ct. 2287); 20 C.F.R. § 404.1520(a)-(f).

"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." *Frankl v. Shalala*, 47 F.3d 935, 937 (8th Cir.1995) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *Id.*

Under the first step of the above analysis, the ALJ determined that Ms. Giles had not engaged in substantial gainful employment since October 23, 2000. (Tr. 16). At the second step, the ALJ determined Ms. Giles had the following severe impairments: headaches, hypothyroidism, arthritis of the back and extremities, hypertension, and depression. (Tr. 16). At the third step, the ALJ determined that Ms. Giles' impairments were not equivalent to one of the listed impairments. (Tr. 16). At the fourth and fifth steps, the ALJ determined that Ms. Giles is unable to perform her past relevant work, but is able to perform other jobs in the national economy. (Tr. 16). Thus, the ALJ concluded that Ms. Giles is not "disabled." (Tr. 16).

### ALJ's Disability Determination

Ms. Giles argues that, when the record is viewed as a whole, including her extensive history of largely unproductive medical treatment, there is not substantial evidence to support the ALJ's finding that she can engage in competitive employment. Specifically, Ms. Giles argues that the ALJ's determination failed to account for the unscheduled breaks and absences her medical conditions mandate, or the fact that she sleeps for two hours after taking her medication twice a day, the side effects of her medications, or her very poor ability to maintain attention, concentration and pace, which the vocational expert testified would preclude competitive employment. Ms. Giles' further notes the ALJ's failure to explain why he apparently disregarded Daniel Ekstrom's opinion from his consultative examination of Ms. Giles in November 2001 that Ms. Giles would have a poor ability to remember and understand in-

structions, procedures and locations and a very poor ability to carry out instructions and maintain attention, concentration and pace in a work setting. Instead, in evaluating Ms. Giles' mental impairments, the ALJ found that she has a mild limitation in activities of daily living, a mild limitation in maintaining social functioning, a mild to moderate limitation in concentration, persistence, or pace, and has not had episodes of deterioration or decompensation. (Tr. 16).

The Commissioner contends that after properly engaging in the credibility analysis, the ALJ incorporated in to Ms. Giles' RFC the impairments and restrictions he found credible, and the vocational expert responded to the ALJ's properly formulated question that Ms. Giles could perform other work. Thus, the Commissioner argues, the ALJ's determination that Ms. Giles is not disabled is supported by substantial evidence.

■■■ The ALJ gave no reason for failing to credit the findings of examining psychologist, Daniel Ekstrom, in setting forth his hypothetical to the vocational expert. Instead, the ALJ apparently adopted the findings of consultative psychiatrist, Dee E. Wright, Ph.D., who did nothing more than review Ms. Giles' medical records. *See* Tr. at 16; Tr. at 265. It has long been established that "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998). Generally, a consulting physician's opinion is not considered substantial evidence, especially if contradicted by a treating physician. *Charles v. Barnhart,* 375 F.3d 777, 783 (8th Cir.2004). The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). Whether the ALJ gives great or small weight to the opinions of treating physicians, the ALJ must give good reasons for giving the opinions that weight. *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir.2001). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir.2001).

"Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits." *Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir.2000) ("These assessments alone [of non-treating physicians] cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician.") *Id.* (citing *Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991)); *Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir.1998) ("If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.").

■■ A review of the record reveals that Daniel Ekstrom was the only mental health professional to actually examine Ms. Giles, though he did not "treat" her for any mental health issues. Ekstrom conducted a comprehensive examination of Ms. Giles and made detailed findings regarding the impact of her medical and emotional condition on her ability to function. Yet, Ekstrom's opinion was obviously discredited by the ALJ, although no reasons for doing so appear in the ALJ's decision. This was error. *Reeder v. Apfel,* 214 F.3d 984, 989 (8th Cir.2000) ("We conclude that the ALJ erred by making his own estimate of Ms. Reeder's IQ level, absent any support in the medical evidence

and without specifically discrediting the estimate of the sole mental health examiner in this case."). When Ekstrom's findings regarding Ms. Giles' work-related abilities, i.e., very poor ability to carry out instructions, maintain attention, concentration, and pace were incorporated into the hypothetical posed to the vocational expert, he testified that Ms. Giles would be precluded from any employment. (Tr. 62). The ALJ's determination that Ms. Giles was not disabled is not supported by substantial evidence.

### ALJ's Credibility Determination

Ms. Giles argues the ALJ erred in finding her not credible. Ms. Giles argues that the ALJ improperly interpreted her low earnings record to mean that she was unmotivated to work, when the record as a whole supports a contrary finding. Ms. Giles also takes issue with the handful of inconsistencies and instances of medical noncompliance noted by the ALJ in rendering his judgment regarding her credibility, and the ALJ's findings that her daily activities were inconsistent with an allegation of total disability.

The Commissioner responds that the ALJ properly evaluated the credibility of Ms. Giles' subjective complaints and correctly determined that she had a residual functional capacity (RFC) that was consistent with the ability to perform other work. The Commissioner contends that the ALJ's credibility determination is supported by substantial evidence in the record, and that the ALJ considered each of Ms. Giles' alleged impairments.

 When evaluating the credibility of a claimant's subjective complaints, the ALJ may not disregard them "solely because the objective medical evidence does not fully support them." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984). "The [ALJ] is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.* In evaluating claimant's subjective impairment, the following factors are considered: (1) the applicant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.* at 1321–22. Subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994); *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993). Where an ALJ seriously considers but for good reasons explicitly discredits a plaintiff's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir.2001).

 In assessing Ms. Giles credibility, the ALJ found her allegations to be less than fully credible and accepted her allegations only insofar as they are consistent with the determination that Ms. Giles is not disabled. (Tr. 26). In so determining, the ALJ found that: (1) Ms. Giles' activities of daily living are inconsistent with an allegation of total disability; (2) Ms. Giles has worked some since her alleged onset date; (3) There were inconsistencies between Ms. Giles' hearing testimony and medical records with respect to the date her headaches began, the amount of weight she had gained, and the number of visits to the emergency room for her headaches; (4) Ms. Giles' failed to stop smoking, when some of her impairments appear to be related to her smoking habit; (5) Ms. Giles' compliance with treatment and medication are questionable, namely her failure to pick up a prescription for medication in September 2000, her failure to take prescribed medicine regularly until a

week prior to a November 2000 doctor appointment, her failure to follow up on a referral to the UIHC headache clinic in July 2001, her self-discontinuation of cholesterol medication, her failure to complete an MRI scan ordered in August 2001, her refusal to take Depakote in August 2002 as recommended because she read it can cause hair loss, her failure to follow through on a doctor's prescription for physical therapy in July 2003, and her refusal to have surgery in an effort to ameliorate her headaches; and (5) Ms. Giles modest and uneven work history. (Tr. 25–26). The court will address these issues in turn.

. At the hearing, Ms. Giles testified that her 14 year-old daughter does the housework, but that she can do some cooking when she is feeling good and not having a migraine headache and that she does the laundry sitting down. (Tr. 51–52). She further testified that her 14 year-old daughter helps the seven year-old child with homework when Ms. Giles is having a migraine, that she makes sure that her two children go to school every day, and that she goes to their school activities when she is not having a migraine. (Tr. 45, 55). When she is having a migraine, she testified that she does nothing but lie still and go to the emergency room for a shot. (Tr. 42). She testified that the migraine headaches make her nauseous and have caused her to black out, and that the medications she takes for her headaches make her drowsy, but have not helped in any manner. (Tr. 42–43, 57). After taking the medication, which she does twice a day, Ms. Giles testified that she has to lie down for a couple hours. (Tr. 43).

It is true that Ms. Giles is able to participate in some daily activities on days when she is not suffering from a migraine headache. However, "a claimant need not prove that he or she is bedridden or completely helpless to be found disabled."

*Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989). *See also Keller v. Shalala*, 26 F.3d 856, 859 (8th Cir.1994) (finding it error to discredit the claimant's subjective complaints of pain based on her daily activities which consisted of watching television, taking care of her dogs, and doing household chores, which claimant testified she could not do when she was suffering from a disabling headache); *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir.2004) ("We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'") (citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). The limited daily activities Ms. Giles is able to engage in, when she is not experiencing a migraine headache, do not support a finding that her allegations are not credible.

Likewise, the fact that Ms. Giles has worked some since her alleged onset date does not support the ALJ's credibility determination. Ms. Giles testified that she lost her job with the Waterloo School System due to excessive absenteeism related to her migraine headaches. (Tr. 40). This testimony stands unrefuted. Ms. Giles' unsuccessful attempt to hold a job and support her children while her disability application was pending does not make her subjective complaints less credible.

The court finds that the ALJ has either misstated or inflated the import of the alleged inconsistencies between Ms. Giles' hearing testimony and her medical records. For example, Ms. Giles testified at the hearing that her headaches began in 1985 after she had a bad fall. (Tr. 41). The ALJ's written decision erroneously

states that Ms. Giles stated that her headaches first started in 1995. (Tr. 23, 25). Ms. Giles' hearing testimony is therefore not inconsistent with her September 2001 report to Dr. Christiason that she had been having headaches for as long as she can remember. (Tr. 25). In fact, it was entirely consistent with what she reported to Dr. Thomas Mulakkan on October 24, 2000. (Tr. 161–62). Similarly, the medical records and Ms. Giles' testimony regarding her weight gain over the last three to four years varies somewhat, but Ms. Giles' weight appears to have fluctuated over the years and is not the basis of her disability claim.

Finally, a review of the record indicates that Ms. Giles visited the emergency room 14 times over a 18 month period (9–00 to 3–02), and visited various other urgent care facilities frequently as well. (Tr. 324). Ms. Giles testified that she has headaches daily, migraine headaches once or twice a month. (Tr. 42). When she experiences a migraine headache, she testified that she goes to the emergency room and gets a shot or something for the pain. (Tr. 42) Ms. Giles testified that her visits to the emergency room happened "like once a month" but then stated that her insurance company "started getting on" her about going there and told her to go to Convenient Care or go back to People's Clinic. (Tr. 56). The record, when reviewed as a whole, does not support the ALJ's finding that "[t]hese inconsistencies and exaggerations diminish the claimant's credibility as to her allegations of total disability." (Tr. 25).

The ALJ found that Ms. Giles' refusal to a smoking cessation program and failure to stop smoking militates against a finding of disability when "some of Ms. Giles' impairments appear to be related to her smoking habit." (Tr. 25). A review of Ms. Giles' medical records reveal that while she did, on one occasion, reject a referral to a smoking cessation program, there is nothing in the medical records indicating that any of her physicians have stated that her smoking was the cause of her problems or that her medical conditions would be relieved by quitting smoking. Under similar circumstances, the Eighth Circuit noted:

> Although Kelley's cardiologist advised her to quit smoking, he did not state that her smoking was the cause of her problems or that her complaints would be relieved by quitting smoking. Although she would undoubtedly improve her general health and well-being by doing so, there is no evidence that her musculoskeletal complaints would be affected. Under the circumstances of this case, we are reluctant to deny benefits solely because of Kelley's failure to quit smoking.

*Kelley*, 133 F.3d at 589–90. Ms. Giles' smoking habit or her decision to decline the referral to the smoking cessation program do not diminish her credibility.

The ALJ also relied on Ms. Giles' alleged non-compliance with prescribed treatment and medication in discrediting her subjective allegations. (Tr. 25). In Ms. Giles' vast medical records, the ALJ found that she had failed to pick up a prescription for medication in September 2000, failed to take prescribed medicine regularly until a week prior to a November 2000 doctor appointment, failed to follow up on a referral to the UIHC headache clinic in July 2001, self-discontinued her cholesterol medication, failed to complete an MRI scan ordered in August 2001, refused to take Depakote in August 2002 as recommended because she read it can cause hair loss, failed to follow through on a doctor's prescription for physical therapy in July 2003, and refused to have surgery in an effort to ameliorate her headaches.

Ultimately, the record reveals that Ms. Giles has tried every, or nearly every medication available in an effort to treat her headaches, but to no avail. That she was tardy in picking up or starting a prescription, having an MRI conducted, or taking physical therapy, when living on a shoestring budget consisting solely of public assistance and battling her insurance company for coverage, as she testified to in the hearing does not diminish her credibility. At the hearing, the ALJ explored little, if at all, into the reasoning behind any of Ms. Giles' alleged non-compliance, but found that it diminished her credibility nonetheless. Ms. Giles testified that she declined to have surgery because two of the three doctors she consulted advised her against it. (Tr. 53). A claimant's unwillingness to have brain surgery against the advice of two physicians can hardly be grounds for finding her not credible.

Ms. Giles' modest and uneven work history, as she testified to at the hearing, is the result of minimum wage jobs and her decision to spend eight years caring for her ailing mother. While it may raise doubts as to Ms. Giles' motivation to work, it is not determinative nor a sufficient basis upon which to find her not credible.

For the above reasons, the ALJ's determination that Ms. Giles is not fully credible is not supported by substantial evidence. Consequently, the ALJ's determination must be reversed.

### Reversal or Remand

The scope of a district court's review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides, in part, that:

[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

[w]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin,* 811 F.2d at 1201–02. *See also Beeler v. Bowen,* 833 F.2d 124, 127 (8th Cir.1987) (although there was no shift in the burden to the Secretary, reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability."); *Stephens v. Secretary of Health, Educ., & Welfare,* 603 F.2d 36, 42 (8th Cir.1979) (reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled).

■ In the present case, the court concludes that the medical records as a whole support Ms. Giles' subjective complaints regarding her migraine headaches. There were no medical records cited by the ALJ indicating that Ms. Giles' subjective complaints were overstated or not sincere. Furthermore, the vocational expert testified that if Ms. Giles, because of her medical condition, would require two or more absences from work per month and two or more breaks during the work day on an unscheduled basis for about a half an hour, then she would be precluded from competitive employment. (Tr. 62).

Additionally, it has already been noted by the court that the ALJ's finding discounting the opinion of Ms. Giles' examining psychologist is not supported by substantial evidence. Therefore, if Daniel Ekstrom's opinion regarding Ms. Giles' work-related abilities, i.e., very poor ability to carry out instructions, maintain attention, concentration, and pace were incorporated into the hypothetical posed to the

vocational expert, then Ms. Giles would be precluded from any employment. (Tr. 62).

Accordingly, the court finds that the record supports a finding of disability. This is based on the fact that if the opinion of Daniel Ekstrom had been given its due weight and included in the RFC relied upon by the ALJ and if the ALJ had properly considered Ms. Giles' credibility, she would have been found unable to be gainfully employed. Because a remand for "further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984).

Upon the foregoing,

IT IS ORDERED that this matter is reversed and is remanded to the Commissioner of Social Security to award benefits.