368 F.Supp.2d 924 (2005)
Patricia GILES, Plaintiff,
v.
Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.
No. C04-2061.
United States District Court, N.D. Iowa, Eastern Division.
April 28, 2005.
*925 *926 Cynthia A. Rybolt, Legal Services Corp. of Iowa, Waterloo, IA, for Plaintiff.
Lawrence D. Kudej, US Attorney's Office, Cedar Rapids, IA, for Defendant.

REVISED ORDER[1]
JARVEY, United States Magistrate Judge.
This matter comes before the court pursuant to briefs on the merits of this application for disability insurance benefits. On March 11, 2005, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(C). (Docket # 12). The final decision of the Commissioner of Social Security is reversed and this matter is remanded for award of benefits.

PROCEDURAL BACKGROUND
Plaintiff Patricia Giles applied for Title II Social Security benefits and Title XVI supplemental security income benefits on October 23, 2000, alleging an inability to work since October 23, 2000, due to chronic headaches, hyperthyroidism, arthritis, and hypertension. Ms. Giles' application was originally denied and was denied on reconsideration. A hearing before Administrative Law Judge (ALJ) John E. Sandbothe was held on October 9, 2003. In an opinion dated March 4, 2004, the ALJ denied benefits. On July 15, 2004, the Appeals Council denied Ms. Giles' request for review.

FACTUAL BACKGROUND
Ms. Giles' relevant medical history is set forth below:

------------------------------------------------------------------------------------------------------------------
 DATE MEDICAL DIAGNOSIS, PROCEDURE, TREATMENT,
 PROVIDER FINDINGS, NOTES, ETC.
------------------------------------------------------------------------------------------------------------------
9/20/00 PCHC S: Also complains of episodes of headache that usually come in
 clusters for a few days, headaches are frontal and usually associated
 with runny eyes and conjunctiva injection. Sometimes takes
 Tylenol with some relief.
 A: Cluster headaches. (Tr. 198)
------------------------------------------------------------------------------------------------------------------

*927
10/11/00 PCHC  Dr. S: Had written a script for Atenolol [on 9/28/00] which patient
 Deborah never picked up. (Tr. 195)
 Johnson
------------------------------------------------------------------------------------------------------------------
10/23/00 Allen Presented to emergency room after passing out at work. Had an
 Memorial additional seizure-like episode in the emergency room and was
 Hospital  not particularly post ictal afterwards, just a little confused for a
 Dr. Steven few moments. Diagnosis: New onset of seizure activity; syncopal
 Lamar, ER episode. The head computerized tomography was negative.
 physician; Admitted to the hospital. Review of symptoms during history/physical
 Dr. Deborah include chronic episodes of dizziness, chronic headache
 Johnson,  usually generalized and throbbing  no relief with Tylenol
 admitting or Motrin. Assessment: syncopal episode with subsequent seizures
 physician as reported; hypertension, controlled, hyperthyroidism.
 Plan: She has an appointment at Iowa City. She had been
 referred there earlier in the month when seen by me for her
 hyperthyroidism for further management. (Tr. 157-160)
------------------------------------------------------------------------------------------------------------------
10/23/00 Allen Procedure: CT Head WO Contrast
 Memorial Impression: Negative noncontrast CT imaging of brain. (Tr.
 Hospital  164-65)
 Dr. Greg
 Raecker
------------------------------------------------------------------------------------------------------------------
10/24/00 Allen Consultation: History of hypertension, hyperthyroidism, chronic
 Memorial headaches, daily headaches. She does have chronic headaches
 Hospital  for the past almost 15 years, daily headaches, mainly in the front
 Dr. Thomas temporal area and at times she does get aggressive headache
 Mulakkan, which does cause some nausea and photophobia. Past medical
 Consulting history significant for headache, history of hyperthyroidism on
 Physician mediation, planning to go to Iowa City for radioactive treatment,
 hypertension. Clinical Impression: General exam and neurological
 exam are unremarkable without any focal deficits. The
 patient possibly had an episode of change in mental status most
 likely due to cyncope, vasovagal episode. In addition, with her
 history of headaches, she may have a vertebrobasilar type of
 vascular headache during syncope. She does have chronic headache
 most likely due to tension, stress headache. However,
 vascular cause cannot be entirely excluded, underlying common
 migraine is a possibility. (Tr. 161-62)
------------------------------------------------------------------------------------------------------------------
10/25/00 Allen Normal MRI of the brain. (Tr. 164)
 Memorial
 Hospital 
 Dr. Lawrence
 Liebscher
------------------------------------------------------------------------------------------------------------------
10/30/00 PCHC  Dr. S: Followup visit from her recent hospitalization on 10/23/00 with
 Deborah syncopal episodes. Since discharge patient still complains of
 Johnson chronic headaches. She did not get any relief from Fioricet
 which she was on in the hospital. On discharge I placed her on
 Midrin and still no relief with this. She states that headaches
 are frontal and constantly aching with feeling of pressure behind
 the eyes. CT of head and MRI were negative for any space
 occupying lesion.
 A: Chronic headache, questionable atypical migraine verses related
 to her hypothyroidism. Patient states she does not feel she
 is able to go back to work at this time because of chronic
 headaches and dizziness, certainly when she returns to work she
 will not be able to operate machinery. Work excuse given until
 10th this month. (Tr. 195)
------------------------------------------------------------------------------------------------------------------

*928
1/25/01 Convenient S: Headache and pain behind her eyes. (Tr. 292)
 Care  Dr.
 Garold
 Moyer
------------------------------------------------------------------------------------------------------------------
02/21/01 PCHC  Dr. S: Patient [has] history of hypothyroidism and cluster headaches
 Kelly Cobb who presents for complaint of pain in right leg and lower back.
 She states she just woke up like this morning and she does not
 recall any trauma to the area. She describes just a cramping
 aching sensation all the way down her leg. She states that her
 knee was swollen earlier this morning but this is resolved. She
 did not report any other arthritic complaints. No neck stiffness.
 No shooting pains. No limitation of use of her joints.
 O: Musculoskeletal examination, she has tenderness over the
 lower L-spine. There is no other evidence of trauma to the leg,
 the knee is without effusion, warmth or tenderness. Patient
 complains of pain wherever you touch the right leg. She also
 complains of pain in the right leg with straight leg raise and with
 flexion and extension of the knee.
 A: Thyroid disease. Patient has not followed up with endocrine.
 Musculoskeletal pain of unknown origin. (Tr. 191)
------------------------------------------------------------------------------------------------------------------
03/22/01 PCHC  Dr. S: Patient ... presents complaining of pain in her right knee
 Kelly Cobb constantly. She states it feels like it is pulsing inside. She also
 states she has had some stiffness in her hands in the morning
 and also pains in her shoulders.
 O: Extremities, no edema. Musculoskeletal, there is no evidence
 of acute synovitis. She has good range of motion of her shoulders,
 elbows, wrists and digits in both hands. She has good
 range of motion of both knees. There does seem to be bony
 deformity of the right knee. There is mild tenderness lateral and
 medial to the patella. There is no warmth or effusion. No
 crepitus.
 A: Hypothyroidism. Many of her complaints could be explained
 by subtherapeutic dose of Synthroid. Knee pain. We will check
 a knee film as well as check for rheumatoid factor given her
 multiple joint complaints. (Tr. 190)
------------------------------------------------------------------------------------------------------------------
03/27/01 Allen Procedure: Right Knee Min 3 Views
 Memorial Findings: There is no joint effusion. There is no fracture or
 Hospital  Dr. dislocation or bony destruction. Femorotibial joint is normal in
 Stephen thickness. No evidence for acute abnormality.
 Frasier Impression: Negative exam. (Tr. 222)
------------------------------------------------------------------------------------------------------------------
03/28/01 Well Woman Answered "yes" to question: "Do you get regular exercise (20
 Health  min/day, 2-4X/wk)?"
 Questionnaire S: Patricia ... presents complaining of pains in the backs of her
  Dr. calves and her right knee constantly. The stiffness in the hands
 Kelly Cobb and shoulders has improved somewhat.
 O: Musculoskeletal examination, there is no effusion or erythemsa
 of the right knee. No tenderness. There is some mild
 tenderness upon palpation of the calf muscle posteriorly.
 A: Myalgias. We will check a CK today. This could also be
 related to her thyroid disease. She does not seem to have any
 active synovitis, may consider rheumatoid factor, a sed rate if
 these symptoms persist after her thyroid tests have normalized.
 (Tr. 185-86)
------------------------------------------------------------------------------------------------------------------
6/01/01 PCHC  S: She was last seen by Dr. Cobb in March of this year. At that
 Office Visit  time, she complained of right knew pain and was placed on
 Dr. Deborah Celebrex. She presents today stating that her knee pain has
 Johnson remained constant and is sometimes in the hand. The right

*929
 knew, she states, swells up and is swollen today. She has morning
 stiffness that lasts more than 30 minutes.
 O: She has very good range of motion at the shoulder joints. No
 edema or erythema noted. She has no active synolitis of the
 fingers. Examination of the knee joints reveals mild edema of
 the right knee compared to the left. No palpable effusion. She
 has point tenderness along the lateral and medial joint lines on
 both knees, but more so on the right. There is no erythema or
 significant warmth. No crepitus on palpation. (Tr. 182)
------------------------------------------------------------------------------------------------------------------
06/07/01 Allen Procedure: Knee Standing AP
 Memorial Reason for Exam: Bilateral knee pain
 Hospital  Findings: The knee joint spaces are symmetric bilaterally. No
 Dr. Stephen chondrocalcinosis is noted. No subchondral sclerosis or particular
 Frazier osterphytosis is seen. No spurring of the tibial spine.
 Impression: Essentially negative AP bilateral standing knees.
 (Tr. 219)
------------------------------------------------------------------------------------------------------------------
7/16/01 PHCH  S: She still complains of chronic headaches. We had tried
 Office Visit several things in the past including Midrin and Fioricet without
 much relief. I had given her referral to headache clinic in Iowa
 City but she did not follow up with this. She is requesting the
 referral be made again for follow up. (Tr. 181)
------------------------------------------------------------------------------------------------------------------
8/22/01 Allen Procedure: UMP Spine Lumbosacral Min 4 Views
 Memorial Findings: Five nonrib bearing lumbar vertebral bodies are present.
 Hospital  They are normal in height and alignment. The disc spaces
 Dr. Lawrence are maintained. No evidence of spondylolysis or spondylolisthesis.
 Liebscher
 Impression: Normal LS spine series. (Tr. 233)
------------------------------------------------------------------------------------------------------------------
8/22/01 Allen Procedure: UMP Pelvis 1 or 2 Views
 Memorial Findings: There is some hip joint space narrowing bilaterally.
 Hospital  There is osteophyte formation and some sclerosis. These abnormalities
 Dr. Lawrence are slightly worse on the left than right. SI joints are
 Liebscher preserved. Bones are intact. There is a phlebolith in the left
 pelvis.
 Impression: There is mild osteoarthritis of both hips, slightly
 worse on the left than right. No acute abnormality. (Tr. 234)
------------------------------------------------------------------------------------------------------------------
9/27/01 Disability S: When I asked her chief complaint for her reason for application
 Determination for disability, she states she has problems with headaches.
 Services She has problems with migraine headaches for as long as she can
 History & remember. Typically cause nausea associated with photo and
 Physical  phonophobia.
 Dr. Kyle O: She is able to get on and off the examination table without
 Christiason assistance. Again her gait is mildly antalgic on the right side,
 otherwise station is normal. She walks and gets around without
 assistance. No tenderness to palpation over the back or spinous
 processes.
 A: Right knee swelling but no active synovitis identified on exam
 today. She has right tenderness to palpation diffusely over the
 knee joint but no specific area.
 P: The patient states a subjective limitation of standing approximately
 one hour and sitting for the same duration of one hour
 before she develops pain mostly in the right knee but also
 somewhat in the back she states. She is able to walk for less
 than a mile any longer before she has to stop and have problems
 with pain. She generally avoids stooping, kneeling or crawling
 because of the knee discomfort, decreased range of motion and
 swelling. (Tr. 239)
------------------------------------------------------------------------------------------------------------------

*930
10/15/01 PCHC  Dr. S: Patricia presents today complaining of bilateral knee pain and
 Deborah swelling times one week. States that when she does get flares
 Johnson the Ultram and the Diflunial that Dr. Palma has her on does not
 help with the pain.
 O: She has mild swelling in both knees. No significant effusion
 appreciated. She has good range of motion. No crepitus appreciated.
 There is no pain on palpation of the medial or lateral
 joint lines.
 A/P: Bilateral knee pain with swelling. Questionable flare of
 arthritis.
------------------------------------------------------------------------------------------------------------------
10/26/01 Physical Explanation of Symptoms: The claimant reports that she has
 RFC pain in her knee and her legs hurt. She states it is like there is a
 Assessment fire in her knee. The lower part of her back and across the
 buttock also hurt. She states her pain is worse when she has a
 lot of movement. Cold, hot, and raining weather also increases
 her pain. She states she is constantly in pain. The claimant
 states she takes Ultram, Dolobid, and Depakote. She also uses
 hot baths and therapy to try and control her pain. The claimant
 reports that her hands swell and she can not bend her fingers.
 At her consultative exam the claimant could extend her fingers,
 make a fist, oppose the fingers, and had normal grip strength.
 The claimant also reports she does not do any lifting or bending
 because of her knee. The claimant also reports that she has
 headaches daily and sometimes they are worse than others. She
 states a typical headache lasts three weeks. She states she has
 to lay down in a dark quite [sic] room and keep very still. She
 states her headaches make her eyes water. The claimant reported
 that she goes to the emergency room with every headache.
 The claimant's hyperthyroidism is being treated with iodine
 treatment. In August 2001 her treating source adjusted her
 meds and she is doing better. The claimant reported on her
 activities of daily living form that she cooks daily, she does
 laundry twice a month, she cares for her two children, and she
 drives, and does the shopping. The claimant's credibility is
 somewhat eroded she states she has headaches for three weeks
 at a time and that she goes to the emergency room with every
 headache. Medical records do not support daily emergency room
 visits. The claimant also reports debilitating pain in her knees,
 yet x-rays are normal. (Tr. 247)
 Explanation of opinion that claimants conclusions are not supported
 by the evidence in the file: The consultative exam doctor
 repeats in his report what the claimant told him she could do.
 She said she could stand one hour and
------------------------------------------------------------------------------------------------------------------
11/01/01 Covenant Referral by Disability Determination Services for Mental Status
 Clinic Examination to be used, in part, to determine eligibility for
 Psychiatry  disability.
 Dan Relevant Background: She reports gaining a considerable
 Ekstrom, amount of weight (70 lbs in the last year), but wonders if it may
 Licensed be related to her thyroid condition.
 Psychologist Activities of Daily Living: Ms. Giles describes the daily activity
 primarily centering around her home and family. Her daily
 activities are largely a function as to how she feels on a given
 day. She typically gets up at between 5:30 and 6:00 am to help
 the children get ready for and leave for school. She oversees the
 children getting dressed and having breakfast before school. On
 which she refers to her "better days" she is capable of doing
 some cleaning and housework. She reports being capable of
 tolerating physical activity for up to one hour. On which she

*931
 refers to as a "bad day", she spends much more time sitting or
 lying around the house and is not capable of doing much if any
 work. As a result, she relies on her 12-year-old daughter to do
 much of the housework and meal preparation that would typically
 be assumed by the mother. During the times she sits or lies
 around the house, she watches TV and takes frequent naps. The
 children come home from school at approximately 3:00 pm. She
 spends time with her children, reviews their day, and possibly
 prepares the meal. The applicant is still capable of doing grocery
 shopping although this is a task that is becoming more
 difficult and unpleasant.
 Diagnostic Impression:
 Axis III: Hypothyroidism, chronic headaches, high blood pressure,
 arthritis. Discussion/Recommendations: Her medical and
 emotional condition are causing significant impairment in her
 ability to function. Based on the current information, I offer the
 following impression as to her work-related abilities:
 1. Remember and understand instructions, procedures, and locations
  poor.
 2. Carry out instructions, maintain attention, concentration, and
 pace  very poor.
 3. Interact appropriately with supervisors, co-workers, and the
 public  fair.
 4. Use good judgment and respond appropriately to changes in
 the workplace  fair. (Tr. 249-252)
------------------------------------------------------------------------------------------------------------------
11/16/01 Covenant Ms. Giles complains of having severe headache lasting six days.
 Clinic  Dr. (Tr. 289)
 Garold S: This patient has been having headaches across her forehead
 Moyer and into her temples bilaterally for the last six days. The has
 had problems with headaches and they usually last for a number
 of days. She denies any numbness or tingling or lightheadedness
 or dizziness no weakness in her extremities. She has been
 nauseated but no vomiting. No photophobia.
 A: Recurrent headaches. (Tr. 290)
------------------------------------------------------------------------------------------------------------------
12/20/01 PCHC  Dr. S: She does have a.m. headaches but this is not new. She has
 Deborah had chronic headache syndrome and has been evaluated for this
 Johnson in the past. Her other complaints is of bilateral knee pain. She
 is on Ultram and ______ by Dr. Palma which she states helps
 some but she still has significant pain in the knees during the day
 and in the mornings before going to work.
 O: She has mild swelling in both knees with no significant
 effusion appreciated. She has good range of motion, no crepitus.
 A/P: In regards to her knee pain, I have given her some Tylenol
 # 3 to use p.r.n. as needed. (Tr. 303)
------------------------------------------------------------------------------------------------------------------
12/23/01 Iowa The evidence in file would suppor moderate cognitive restrictions
 Disability of function in this claimant's case. The claimant does
 Determination exhibit variable attention and concentration. Subsequently, the
 Services claimant would have difficulty performing complex cognitive activity
 Psychiatric that would require prolonged attention to minute details
 Technique and rapid shifts in alternating attention. despite these restrictions,
 Review  Dee the claimant is capable of sustaining sufficient concentration
 E. Wright, and attention to perform non complex, repetitive, and routine
 Ph.D. cognitive ability when she is interested in doing so. Her work
 history, her presentation during the most recent psychological
 evaluation, and her activities of daily living would corroborate
 this observation. (Tr. 273)
------------------------------------------------------------------------------------------------------------------
01/10/02 PCHC Telephone call: Has taken two Tylenol # 3 today. No relief.
 "Head is banging." Approval given to go to E.R. (Tr. 302)

*932
------------------------------------------------------------------------------------------------------------------
01/14/02 Cedar Valley Diagnoses:
 Medical 1. Myalgias, rule out hypothyroid related myopathy.
 Specialists  2. Sciatica, rule out disc herniation.
 Dr. Claro 3. Osteoarthritis of the peripheral joints.
 Palma Plan of treatment and/or recommendations:
 1. I ordered an MIR of her lumbar spine. She had not completed
 this MRI scan, which I ordered during her last visit in August
 2001. (Tr. 275, 432)
------------------------------------------------------------------------------------------------------------------
01/16/02 Allen Procedure: UMP MR Spine Lumbar WO Contrast
 Hospital  Findings: Mild annular bulging and degenerative changes of the
 Dr. Greg facets arguably result in minimal to mild compromise in the
 Raecker caliber of the central spinal canal and some narrowing of foramina
 at L4-5 and L5-S1. Otherwise, this exam is unremarkable.
 Lumbar vertebral body heights and disc spaces are maintained.
 There is no evidence for an intervertebral disc herniation.
 Impression: Minimal to mild central spinal canal stenosis with
 narrowing of foramina at L4-5 and L5-S1 as described. Overall
 this is a rather unremarkable exam. No evidence for an intervertebral
 disc herniation. (Tr. 285, 448)
------------------------------------------------------------------------------------------------------------------
01/23/02 Convenient Assessment: Migraine headache. (Tr. 287)
 Care  Dr.
 Garold
 Moyer
------------------------------------------------------------------------------------------------------------------
02/06/02 Covenant She has been feeling very poorly for quite some time related to
 Clinic  Dr. marked fatigue and rather severe headaches. She's taking a
 Richard M. number of headache medications and requires parenteral medication
 Warhol at times for relief. It appears Ms. Giles has adequate
 thyroid hormone replacement. I don't think her headaches and
 fatigue are related to her thyroid replacement. (Tr. 286)
------------------------------------------------------------------------------------------------------------------
02/19/02 PCHC  Dr. S: Numbness to left side from shoulder to toes that occurred day
 Sharon before. She has had some problems with low back pain. Recently
 Duclos underwent an MRI which should minimal to mild central
 spinal canal stenosis with narrowing fo the foramina at L4-5 and
 L5-S1 but basically no impingement on the nerves. Patient
 states her pain was severe enough that she was just unable to
 work yesterday and today.
 O: Neurologic, cranial nerves 2 through 12 are grossly intact.
 She has 5/5 strength of all extremities. She has a normal gait.
 Her musculoskeletal, left hip is tender to palpation all over. She
 has negative straight leg raises. She has 2+ deep tendon
 reflexes of the upper and lower extremities.
 A: 1. Left hip pain with radiation down left leg. 2. Left hand
 numbness. (Tr. 299)
------------------------------------------------------------------------------------------------------------------
02/26/02 PCHC  Dr. S: Follow-up visit. She had seen Dr. Duclos last week with
 Deborah complaints of numbness in left arm and leg. She reports that
 Johnson this had happened the day before she came in. She had woken
 up that morning with a severe headache associated with some
 blurred vision and nausea and vomiting. She had driven to work
 and when she reached the parking lot, she started experiencing
 some numbness in the left arm and leg. She states that one of
 her co-workers helped her out of a car and took her home, and
 she had to lay in a dark, quiet room until she felt better. Her
 symptoms resolved in 24 hours. She denied any further numbness
 or tingling. Her main complaint today is feeling achy all
 over. Her aches are mainly in the shoulders and in the pelvic
 girdle.

*933
 O: She has pretty good range of motion at both shoulders, the
 elbow, and wrists. She has good range of motion at the hip joint.
 A/P: 1. Chronic pain syndrome. Rule out fibromyalgia or polymyalgia
 rhermatica. 2. Polyarthalgia
 P: In regards to her symptoms of headache with some numbness
 in her extremities that she experienced about a week or so ago, I
 think the differential there is a complex migraine verses a TJA.
 Just knowing her history from chronic headaches, I think the
 former is more likely. (Tr. 298)
------------------------------------------------------------------------------------------------------------------
03/14/02 PCHC  Dr. Here with severe headache times one week.
 Muhammed O: She appears to have a moderately severe headache. Trying
 Pathan to keep quiet. Otherwise unremarkable. Requesting excuse for
 yesterday and today.
 A: Headache. (Tr. 295)
------------------------------------------------------------------------------------------------------------------
03/19/02 PCHC  Dr. S: Patricia presents today complaining of a headache times two
 Deborah weeks. She has seen Dr. Pathan sometime last week for the
 Johnson same and was given a Toradol shot which she states did not help.
 She also reports being seen at Convenient Care in the past ans
 was given the same shot with some Vistaril without any relief. I
 had called in some Fioricet for her which she states she had a
 reaction to. States that made her very nervous and had heavy
 sweating. Her headaches are frontal and pounding, associated
 with photophobia and sometimes nausea. She denies any neck
 stiffness. She has a history of chronic headaches. I had given
 her a referral in the past to the headache clinic in Iowa City, but
 I do not think she ever made that appointment. She had an MRI
 of her head back in the later part of 2000 during a hospitalization
 and that was negative.
 A/P: Headache syndrome, most probably migraine headaches.
 Referral was given to the headache clinic in Iowa City. I have
 also requested an MRI and an MRA of her brain. (Tr. 294)
------------------------------------------------------------------------------------------------------------------
05/09/02 Physical Primary diagnosis: mild osteoarthritis, hips; mild central spinal
 Residual canal stenosis, L4-5 and L5-S1. Secondary diagnosis: hypothyroidism;
 Functional hypertension.
 Capacity Explanation of Exertional Limitations: Claimant alleges pain and
 Assessment  aches in many parts of her body, to include knees, shoulder,
 Dr. wrists, hands, and back. X-rays of lumbar spine (8-01) and
 Chrystalla knees (6-01) are negative for arthritic changes. X-ray of hips on
 Daly 8-01 shows mild osteoarthritis. MRI on 1-02 shows minimal
 central canal stenosis of L4-5 and L5-S1 without nerve impingement
 and the comment by the radiologist was "... overall a
 rather unremarkable exam." There are no x-rays in the file for
 the hand/wrists or shoulder.... There are multiple internal
 inconsistencies in the record and there is no firm diagnosis
 established for symptoms. Dr. Palma does document the pain of
 the shoulder, feet and knees and swelling of the wrists/hands,
 knees and feet, but finds normal range of motion and 14 positive
 tender points on 6-01 with the diagnosis of arthralgias, myalgias,
 hypothyroidism, and feet swelling. On 8-01 he diagnosed sciatica,
 OA and myalgias due to hypothyroidism. Exam was significant
 for straight leg raising bilaterally to 75 degrees, spasm of
 the neck and trapezius muscles, swelling of the knees, wrists/hands,
 crepitus and pain of the knees and normal ranges of
 motion. There is no MRI evidence for sciatica, no x-ray evidence
 for OA of the wrists/hands, back or shoulder and hypothyroidism
 is now managed by thyroid hormone replacement. CE of 9-01
 did find decreased range of motion of right hip and right knee,
 slight swelling of the right knee but no evidence of synovitis,

*934
 normal station and slightly antalgic gait on the right. Claimant
 was able to squat, heel and toe walk, had 5/5 lower extremity
 strength, 4/5 upper extremity strength and the ability to oppose
 fingers, make a fist and extend hand. Treating sources at
 Peoples Clinic saw claimant from 2-01 to 12-01 for various
 musculoskeletal pains but offer no diagnosis. The claimant's
 allegations of severity of limitations based on the musculoskeletal
 symptoms are out of proportion to the findings and seem inconsistent
 with the caring of two children, ages 5 and 13. She does
 state that the older child helps with household chores and cleaning.
 Claimant states that she never did dishes, changed, sheets,
 vacuums, sweeps, takes out trash. This seems inconsistent with
 the caring of two children. Also, there is no basis on which to
 assess function since she states she basically sits during the day
 or sleeps, either because of pain or side effects from medication.
 This is inconsistent with the supervision of children, especially a
 4-year old, which is the age of the youngest child a year ago.
 Claimant states she has trouble from the time she gets up and
 does no house cleaning, yard work, or exercises, but states she
 can walk no longer than an hour without being in severe pain.
 Explanation of Symptoms: Claimant alleges daily, chronic headaches
 that last from 2-3 weeks to months that keep her from
 doing anything (no work, no eating) except laying down. Description
 of headaches are consistent with migraines and multiple
 medications have been tried, allegedly without relief. Claimant
 states she needs medical attention very often and goes to urgent
 care monthly whenever headaches are severe. Review of MER
 reveals visits did occur from 9-00 to 3-02 (14 visits) and 4 of
 which resulted in IM injections for relief of pain. The frequency
 of visits in MER is inconsistent with the number of alleged visits.
 Claimant was referred to UIHC headache clinic and it is unknown
 whether she has attended. (Tr. 319-325)
------------------------------------------------------------------------------------------------------------------
5/09/02 Allen Physician's Orders: Patient does not recollect taking Depakote
 Hospital  Dr. before. If this is true, then start 250 mg po bid x2 weeks & ↑ to
 N. Selvaraj 500 mg bid. If depakote already tried then start Topamax....
 (Tr. 363)
------------------------------------------------------------------------------------------------------------------
5/09/02 Cedar Letter to Dr. Johnson
 Valley Diagnoses: 1. Degenerative spine arthritis with sciatica, but no
 Medical evidence of disc herniation. 2. Osteoarthritis of the peripheral
 Specialists  joints, mild. 3. Diffuse Myalgias secondary to hypothyroidism.
 Dr. Claro (Tr. 424)
 Palma
------------------------------------------------------------------------------------------------------------------
5/21/02 Iowa Medical Consultant Review Summary: A functional assessment
 Disability indicates the claimant is able to understand and remember tasks
 Determination and instructions of a simple nature. She has sufficient concentration
 Services  and attention to perform simple repetitive activities. The
 Dr. Herbert claimant is able to interact appropriately with supervisors, co-workers
 Notch, Ph.D. and the public. She is able to use fair judgment, and
 handle changes at work-like activities. Claimant allegations are
 credible and medical and non-medical evidence is consistent. (Tr.
 344)
------------------------------------------------------------------------------------------------------------------
8/08/02 Allen Procedure: CT of the head without contrast
 Memorial Findings and Impression: Head CT demonstrates normal ventricular
 Hospital  system and sulci. There is no midline shift. No intracranial
 Dr. Driss hemorrhage. No evidence for extra acial fluid collection.
 Cammoun There is small lacunar infarct involving the genu of the left
 internal capsule. Otherwise examination is unremarkable. No
 evidence for acute hemorrhage. (Tr. 404)

*935
------------------------------------------------------------------------------------------------------------------
8/9/02 Allen History & Physical: Assessment  1. Intractable migraine headaches.
 Memorial The patient has had workup for this in the past and has
 Hospital  seen two neurologists. She has been difficult to control and has
 Dr. Deborah not had any response from Amerge, narcotics, NSAIDs, Fioricet,
 Johnson Elavil, or Depakote. Currently she is on beta blocker. We will
 place her on a Demerol pump and will ask neurology to evaluate.
 2. Questionable lacunar infarct. We will pursue stroke workup
 including a sedimentation rate. (Tr. 349-50)
------------------------------------------------------------------------------------------------------------------
8/9/02 Allen Consultation
 Memorial History of Illness: Past medical history of chronic migraine
 Hospital  headaches, which over the last few months have become chronic
 Dr. Selvaraj daily headaches. Her headaches are described as bioccipital and
 Nithianandam bifrontal headaches, which are present almost constantly
 throughout the day. She has a mild headache throughout the
 day and then has severe headaches once or twice a month.
 Although the patient does not recollect taking Depakote in the
 past, Dr. Johnson's notes indicates that she was on Depakote at
 some point. She also frequents the local hospital emergency
 rooms at least twice a month for parenteral pain medications.
 Impression and Recommendation: She has a prior history of
 migraines, but these have become more troublesome in the recent
 past. I would start by using Depakote if the patient has not been
 tried on Depakote in the past ... If the patient has tried on
 Depakote before and it failed, then the only other option I could
 think of right now is Topamax. (Tr. 351-53)
------------------------------------------------------------------------------------------------------------------
8/10/02 Allen Progress Notes:
 Memorial 2000 Denied pain or need. Took telemetry unit off and refuses to
 Hospital wear. Wants to take pain pills and DC the i.v.
 0830 Requests IV's be taken out.
 0830 Pt. refused to take Depakote. States med will make her
 hair fall out. States does not take furosemide daily at home.
 Agreeable to take does now. (Tr. 386)
------------------------------------------------------------------------------------------------------------------
8/12/02 Allen Discharge Summary: History of Present Illness: This patient is
 Memorial a 38-year-old female with a past medical history significant for
 Hospital  chronic migraine headaches and hypothyroidism who presented
 Dr. Deborah to the emergency room with complaints of headache and weakness
 Johnson in her legs. The patient has headaches almost on a daily
 basis, but states that they were worse several days prior to
 admission. The headaches were associated with photophobia,
 nausea, dizziness and some ringing in the ear. On the day of
 admission, she developed some numbness on the right side of the
 face and weakness in the legs. She reported falling at home
 because her legs gave out on her. In the emergency room, she
 had a CT scan of the head which showed a possible small left
 lacunar infarct.
 Hospital Course: She was seen by neurology, Dr. Selvaraj, who
 did not feel that she had a stroke. He did not see any infarct on
 the CT scan. For her migraine headaches, he recommended
 trying Depakote or Topamax. The patient was tried on Depakote
 in the past and refused to take it any further because she
 had read that it can cause some hair loss. (Tr. 345-46)
------------------------------------------------------------------------------------------------------------------
8/12/02 Allen Physician's Orders: Pt does not wish to continue Depakote for
 Hospital  fear of hair loss, will use Topamax instead. (Tr. 361)
 Dr. Deborah
 Johnson
------------------------------------------------------------------------------------------------------------------
8/19/02 PCHC  Dr. S: Follow-up visit from her recent hospitalization. She was
 Deborah hospitalized with headaches and some weakness. CT scan of the

*936
 Johnson head had shown a small left sided lacunar infarct. However she
 was seen by Dr. Salvarage who did not see any signs of infarct on
 the CT scan ... She states that her headaches are a little better
 on these medications but she still has daily headaches.
 A/P: 1. Refractory migraine headaches ... I have encouraged
 her to try and make the necessary changes with her insurance so
 that she can be seen at the headache clinic in Iowa City. 2.
 Possible CVA with small lacunar infarct on CT scan. (Tr. 508)
------------------------------------------------------------------------------------------------------------------
8/27/02 Cedar Valley Impression: Based upon history, physical, and neurological examination,
 Medical I believe headaches are due to Chiari I malformation.
 Specialists  Neurological examination is normal. (Tr. 415-16)
 Dr. Ivo
 Bekavac
------------------------------------------------------------------------------------------------------------------
8/28/02 Allen Principal Diagnosis: Intractable Migraine Headache Secondary
 Memorial Diagnoses: Hypothyroidism; Tobacco Abuse; Htn (Tr. 345)
 Hospital
------------------------------------------------------------------------------------------------------------------
9/12/02 Dr. Claro Notes from exam: No warmth or knee effusion, tenderness over
 Palma the (illegible) of both knees. (Tr. 422) Letter to Dr. Johnson
 Plan of treatment/recommendations: 2. To investigate knee pain
 further, I ordered an MRI of the knees. If these are negative, I
 will defer any further evaluation, as I have no other explanation
 for her knee pain. She has some mild osteoarthritis only. (Tr.
 417)
------------------------------------------------------------------------------------------------------------------
9/12/02 PCHC Charting: Palma called  negative work up so far. Cannot find
 an explanation for her pain. Pt. unhappy et con't to c/o knee et
 leg swelling. (Tr. 509)
------------------------------------------------------------------------------------------------------------------
9/18/02 Allen Procedure: Left UMP MR Knee WO Contrast
 Memorial Reason for Exam: Bilateral knee pain & swelling. No known
 Hospital  injury, no surgery.
 Dr. Greg Findings: There is no evidence for meniscal tear. ACL and PCL
 Raecker intact. Medial and lateral collateral ligaments intact. Minimal
 joint effusion. No marrow signal abnormalities in distal femur or
 proximal tibia.
 Impression: Minimal effusion. No evidence for meniscal tear.
 Supporting ligaments of knee intact. (Tr. 446)
------------------------------------------------------------------------------------------------------------------
9/18/02 Allen Procedure: Right UMP MR Knee WO Contrast
 Memorial Reason for Exam: Bilateral knee pain & swelling. No known
 Hospital  injury, no surgery.
 Dr. Greg Findings: There is no evidence for meniscal tear. ACL and PCL
 Raecker intact. Integrity of medial and lateral collateral ligaments maintained.
 Small joint effusion. No marrow signal abnormalities in
 distal femur or proximal tibia. Impression: Small joint effusion.
 Otherwise negative. (Tr. 447)
------------------------------------------------------------------------------------------------------------------
10/22/02 PCHC Pt. called concerned that neurology HA clinic at UIHC does not
 have appt. until 4/03. (Tr. 505)
------------------------------------------------------------------------------------------------------------------
10/31/02 PCHC  Dr. S: In terms of her headaches, she is still waiting for a call from
 Deborah Iowa City to be seen by the neurologist and neurosurgeon. Her
 Johnson insurance did approve this referral. (Tr. 503)
------------------------------------------------------------------------------------------------------------------
11/12/02 Covenant Diagnosis: Lumbar degenerative joint disease of the spine, bilateral
 Medical sacroilitis
 Center  Dr. Procedure Bilateral L4-5, L5-S1 facet joint, bilateral SI joint
 Gayathry injection (Tr. 449)
 Inamdar
------------------------------------------------------------------------------------------------------------------
11/20/02 Covenant Test: Hip 2 Vws Lt.
 Medical Reason for test: Left hip, left hip and leg pain
 Center  Dr. Left Hip AP Oblique: Normal Study. (Tr. 455)

*937
 Lawrence
 Furlong
------------------------------------------------------------------------------------------------------------------
12/19/02 PCHC  Dr. S: The patient reports she was also seen in Iowa City by a
 Deborah neurologist in November for chronic headaches ... She states he
 Johnson felt she did not need to have any surgical procedure for her
 Arnold Chiari malformation. He feels that her headaches are
 chronic migraines and states that he or myself will have to find a
 medication that will help to control her headaches.
 A/P: Chronic, daily headaches. (Tr. 500)
------------------------------------------------------------------------------------------------------------------
12/30/02 PCHC  Dr. S: Since our last visit she has been given a trial of Imitrex. She
 Deborah feels that it helps somewhat but she still has the daily headaches.
 Johnson (Tr. 499)
------------------------------------------------------------------------------------------------------------------
1/21/03 PCHC  Dr. S: Patient presents today complaining of left sided neck, shoulder,
 Deborah and arm pain times one week.... She was seen in the Er
 Johnson at Allen on the 18th and had an x-ray done of the left shoulder
 which showed some degenerative change of the AC joints, otherwise
 it was negative.
 O: She is quite tender over the deltoid bursa. She also has
 tenderness over the glenohumeral joint itself and the acromioclavicular
 joint. She has a lot of muscle tenderness over the left
 sized trapezius. She has good flexion and extension of the neck
 but she experiences discomfort on rotation to the right. A/P: 1.
 Acute left shoulder pain, probable bursitis.... A toradol shot
 was given today. (Tr. 498)
------------------------------------------------------------------------------------------------------------------
1/23/03 PCHC  Dr. S: This patient presents today still complaining of left shoulder
 Deborah and arm pain. She does not feel that the Vicodin is helping with
 Johnson the pain.
 O: She has moderate tenderness on palpation of the left glenohumeral
 joint and tenderness of the biceps muscle to about the
 mid point. During exam, she complains that her biceps muscle
 feels as though it is tied up in a ball. She had much discomfort
 with any type of movement.
 A/P: Continued left shoulder and arm pain. Referral given for
 an MRI of that shoulder and also of the upper arm to the level of
 the mid biceps to rule out any torn ligament, tendon or muscle.
 Referral also given to ortho for further evaluation. Percodan
 given for pain. I warned her that it can cause drowsiness. (Tr.
 497)
------------------------------------------------------------------------------------------------------------------
1/30/03 Allen Exam: Left UMP MR Shoulder WO Contrast
 Memorial Findings: Spurring/capsular hypertrophy, AC joint. This causing
 Hospital  Dr. at least mild impingement upon musculotendinous junction of
 Greg Raecker supraspinatus. Increased signal within supraspinatus at this
 level. Supraspinatus tendon intact and not retracted. Subacromial/subdeltoid
 fat plane preserved. No abnormal fluid beneath
 the acromion. No marrow signal abnormalities, proximal
 humerus.
 Impression: AC joint spurring/capsular hypertrophy with at least
 mild impingement upon supraspinatus. Adjacent supraspinatus
 tendinitis. Supraspinatus tendon intact. (Tr. 510)
------------------------------------------------------------------------------------------------------------------
3/19/03 PCHC  Dr. S: Her left shoulder is much better after seeing Dr. Crouse and
 Deborah having an injection done ... She reports that her headaches are
 Johnson a little better. The Imitrex helps dull the headache for an hour
 or two after she takes it.
 A/P: 1. Migraine headaches. (Tr. 495-96)
------------------------------------------------------------------------------------------------------------------
3/26/03 Allen Procedure: MRI of brain without contrast.
 Memorial Findings: Nonspecific abnormal signal from the mastoid on the
 Hospital  Dr. right noted consistent with right mastoiditis.

*938
 Cammoun Impression: Chiari I malformation with tonsillar ectopia extending
 Driss below the foramen magnum by about 1 cm. Very mild sinus
 disease.
 Note: Previous exam was obtained dated 10-25-00 and shows no
 significant interval change. (Tr. 516, 517)
------------------------------------------------------------------------------------------------------------------
4/29/03 PCHC  Dr. Problem List: Migraine headaches, Grave's disease, status post
 Deborah radio-iodine therapy, now with hypothyroidism, osteoarthritis of
 Johnson peripheral joints, mild spinal stenosis, seasonal allergies.
 S: This patient presents today complaining of muscle soreness all
 over times about three to four days. She denies any pain in the
 joints. She has a lot of soreness and muscle tightness around the
 neck and over the trapezius over the shoulders, in the muscles of
 the upper arms, the thighs and lower legs.... She denies any
 weakness in the arms or the legs.... Her other concern was to
 get a referral to Iowa City for inpatient admission. She will be
 going there on the 6th of next month under the care of Dr.
 Geweke for a trial of D.H.E. and Thorazine for her migraine
 headaches.
 O: No swelling noted of the hand, wrist, elbow, shoulder, knee or
 ankle joints. She has good range of motion at the above-mentioned
 joints. She has some tenderness and tightness on
 palpation over the trapezius muscles at the base of the neck,
 triceps and biceps muscles, muscles in the thigh and also in the
 calf. Homan's sign is negative. She has no lower extremity
 edema. Strength was 5/5 bilaterally, both proximally and distally
 in the upper and lower extremities.
 A/P: 1. Generalized myalgias, etiology at this time questionable.
 2. Chronic headaches. Referral was given for the inpatient
 treatment that is scheduled for the 6th of next month. I will
 dictate a letter to Coventry to try to get approval for this. (Tr.
 494)
------------------------------------------------------------------------------------------------------------------
5/2/03 & PCHC 5/2/03  Call from patient's insurance company re: I.C. appt. 
5/5/03 Medical Director denied it.
 5/5/03  Called & left message with pt's daughter letting her
 know her insurance denied admission to UIHC & call with
 questions. (Tr. 492)
------------------------------------------------------------------------------------------------------------------
6/06/03 PCHC  Dr. S: This is a lady who has come in with complaints of left sided
 Amarnath neck pain that has been there since this morning, it hurts when
 Kathresal she moves her back. She has noticed a small lump in that area.
 O: On physical exam she has a small lymph node that is palpable
 and there is significant tenderness in the adjoining muscles on
 the left side of the neck that extends onto the shoulder.
 A/P: Muscle spasm. I asked her to take Flexeral and sent her
 for physical therapy. (Tr. 490)
------------------------------------------------------------------------------------------------------------------
7/17/03 PCHC  Dr. S: Continued pain in her shoulder area. She says this has been
 Amarnath bothering her quite a bit. She did not go for physical therapy
 Kathresal the last time. The pain is essentially in the shoulder, not much in
 the neck.
 O: On physical exam she has some tenderness over the trapezius
 muscles bilaterally. She has some diffuse low back tenderness
 too.
 A/P: she has upper back pain and shoulder pain that is muscular.
 ... I will also send her for physical therapy as symptoms
 have been going on for so long. (Tr. 490)
------------------------------------------------------------------------------------------------------------------
08/11/03 PCHC  Dr. S: Patricia presents today with continued complaints of pain into
 Deborah her left shoulder, below the right shoulder blade, and also in the
 Johnson lower back X about one month. The pain across the left shoulder

*939
 started in the neck but the neck pain has resolved. She denies
 any pain in the shoulder joint itself or with movement of the
 shoulder joint. She also has a feeling of muscle tightness below
 the right shoulder blade. She has had two therapy episodes on
 this shoulder and does not feel that it has helped so far. She has
 been taking Flexeril and ibuprofen and doesn't feel that has
 really helped. The lower back pain is in the lumbar region and
 radiates down her left leg. She has some numbness in the calf of
 the left leg. She feels that his lower back pain has gotten worse,
 she rates it as an 8/10 on a pain scale.
 O: No edema or erythema noted of the left shoulder. She has
 mild to moderate tenderness over the trapezius muscle on the left
 side. She has good range of motion at the shoulder joint, no
 tenderness over the glenohumeral or acromioclavicular joints.
 There is some tenderness in the paraspinal muscles below the
 right scapula. She has mild tenderness on palpation of the
 lumbosacral spine. Straight leg raise was negative on both sides.
 Strength is 5/5 bilaterally in both upper and lower extremities.
 Reflexes are brisk. Gross and find sensation intact in the lower
 extremities.
 A/P: 1. Lower back pain with radiculopathy.... The pain in the
 left shoulder and below the right shoulder blade appears to by
 myofascial pain. She will continue with physical therapy. (Tr.
 488)
------------------------------------------------------------------------------------------------------------------

In the hearing beforethe ALJ, Ms. Giles testified that she had completed high school and one year of college. (Tr. 40). She last worked in 2001 in food service at Central School in Waterloo. (Tr. 40). Her employment there was terminated because she missed too many days of work due to her migraine headaches. (Tr. 40). Ms. Giles testified that she first started having headaches in about 1985, when she had a bad fall. (Tr. 41). She testified that she has headaches every day, severe headaches once or twice a month. (Tr. 42, 56-57). When she is experiencing a severe headache, she does nothing but lie still and go to the emergency room for a shot. (Tr. 42). The severe headaches make her nauseous and have caused her to black out. (Tr. 42). The medications Ms. Giles takes for her headaches make her drowsy, but have not helped in any manner. (Tr. 42-43, 57). After taking the medication, which she does twice a day, she has to lie down for a couple hours. (Tr. 43). Ms. Giles testified that she her insurance would not cover the intensive treatment in Iowa City, as suggested by one of her treating doctors, and that she could not afford to pay for the treatment herself. (Tr. 45). Ms. Giles testified that she went to the emergency room for her headaches about once a month, but her insurance company started getting on her about going there and told her to go to Convenient Care or go back to People's Clinic instead. (Tr. 56, 57).
With respect to other physical problems, Ms. Giles testified that she has back problems, stenosis, thyroid problems, her right knee stays swollen, her left ankle is currently swollen, and her left shoulder gives her problems as well. (Tr. 45). In terms of her ability to do things, Ms. Giles testified that her 14 year-old daughter helps out a whole lot, and that the 14 year-old daughter helps the seven year-old daughter *940 with her homework when Ms. Giles is having a bad migraine headache. (Tr. 46). Ms. Giles testified that she can sit for about an hour before she has to get up and move around, she can stand for about an hour at a time, she can walk for about an hour before she would have to stop, and that she has to lay down in order to get relief. (Tr. 47). The medications she takes for her back pain make her vomit and they knock her out, put her to sleep. (Tr. 48). Ms. Giles testified that she had 12 injections in her back for the pain, but it did not help. (Tr. 49-50).
Regarding her daily activities, Ms. Giles testified that her 14 year-old daughter does the housework. (Tr. 51). When she's not having a migraine, Ms. Giles does some cooking. (Tr. 51-52). She also does the laundry, but must sit down to do it. (Tr. 52). Ms. Giles further testified that she makes sure that her children go to school every day and that she goes to their school activities if she is not having a migraine. (Tr. 55).
Ms. Giles testified that her weight is up about 40 pounds over the last three or four years. (Tr. 54). She attributed her weight gain to the medications she takes. (Tr. 54). Ms. Giles took care of her ailing mother from 1989 until 1997 when her mother passed away. (Tr. 55).
When questioned by the ALJ, the vocational expert testified that two or more absences per month and two or more breaks during the work day on an unscheduled basis for about a half an hour would preclude competitive employment for Ms. Giles. (Tr. 62). When questioned by Ms. Giles' attorney, the vocational expert testified that, assuming that Ms. Giles' ability to carry out instructions, maintain attention and concentration and pace are very poor, meaning that she was not able to do so on a consistent basis, then Ms. Giles would be precluded from any employment. (Tr. 62).

CONCLUSIONS OF LAW

Scope of Review
In order for the court to affirm the Administrative Law Judge's (ALJ) findings of fact, those findings must be supported by substantial evidence appearing in the record as a whole. See Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir.1992); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989). Substantial evidence is more than a mere scintilla. It means relevant evidence a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1997); Cruse, 867 F.2d at 1184; Taylor v. Bowen, 805 F.2d 329, 331 (8th Cir.1986). The court must take into account evidence which fairly detracts from the ALJ's findings. Cruse, 867 F.2d at 1184; Hall v. Bowen, 830 F.2d 906, 911 (8th Cir.1987). Substantial evidence requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Cruse, 867 F.2d at 1184 (quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. Gunnels v. Bowen, 867 F.2d 1121, 1124 (8th Cir.1989); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir.1987).

ALJ's Determination of Disability
Determining whether a claimant is disabled is evaluated by a five-step process. See 20 C.F.R. § 404.1520(a)-(f); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).
The five steps are:
*941 (1) If the claimant is engaged in substantial gainful activity, disability benefits are denied.
(2) If the claimant is not engaged in substantial gainful activity, her medical condition is evaluated to determine whether her impairment, or combination of impairments, is medically severe. If the impairment is not severe, benefits are denied.
(3) If the impairment is severe, it is compared with the listed impairments the Secretary acknowledges as precluding substantial gainful activity. If the impairment is equivalent to one of the listed impairments, the claimant is disabled.
(4) If there is no conclusive determination of severe impairment, then the Secretary determines whether the claimant is prevented from performing the work she performed in the past. If the claimant is able to perform her previous work, she is not disabled.
(5) If the claimant cannot do her previous work, the Secretary must determine whether she is able to perform other work in the national economy given her age, education, and work experience.
Trenary v. Bowen, 898 F.2d 1361, 1364 n. 3 (8th Cir.1990) (citing Bowen v. Yuckert, 482 U.S. at 140-42, 107 S.Ct. 2287); 20 C.F.R. § 404.1520(a)-(f).
"To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir.1995) (citing Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir.1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. Id.
Under the first step of the above analysis, the ALJ determined that Ms. Giles had not engaged in substantial gainful employment since October 23, 2000. (Tr. 16). At the second step, the ALJ determined Ms. Giles had the following severe impairments: headaches, hypothyroidism, arthritis of the back and extremities, hypertension, and depression. (Tr. 16). At the third step, the ALJ determined that Ms. Giles' impairments were not equivalent to one of the listed impairments. (Tr. 16). At the fourth and fifth steps, the ALJ determined that Ms. Giles is unable to perform her past relevant work, but is able to perform other jobs in the national economy. (Tr. 16). Thus, the ALJ concluded that Ms. Giles is not "disabled." (Tr. 16).

ALJ's Disability Determination
Ms. Giles argues that, when the record is viewed as a whole, including her extensive history of largely unproductive medical treatment, there is not substantial evidence to support the ALJ's finding that she can engage in competitive employment. Specifically, Ms. Giles argues that the ALJ's determination failed to account for the unscheduled breaks and absences her medical conditions mandate, or the fact that she sleeps for two hours after taking her medication twice a day, the side effects of her medications, or her very poor ability to maintain attention, concentration and pace, which the vocational expert testified would preclude competitive employment. Ms. Giles' further notes the ALJ's failure to explain why he apparently disregarded Daniel Ekstrom's opinion from his consultative examination of Ms. Giles in November 2001 that Ms. Giles would have a poor ability to remember and understand instructions, *942 procedures and locations and a very poor ability to carry out instructions and maintain attention, concentration and pace in a work setting. Instead, in evaluating Ms. Giles' mental impairments, the ALJ found that she has a mild limitation in activities of daily living, a mild limitation in maintaining social functioning, a mild to moderate limitation in concentration, persistence, or pace, and has not had episodes of deterioration or decompensation. (Tr. 16).
The Commissioner contends that after properly engaging in the credibility analysis, the ALJ incorporated in to Ms. Giles' RFC the impairments and restrictions he found credible, and the vocational expert responded to the ALJ's properly formulated question that Ms. Giles could perform other work. Thus, the Commissioner argues, the ALJ's determination that Ms. Giles is not disabled is supported by substantial evidence.
The ALJ gave no reason for failing to credit the findings of examining psychologist, Daniel Ekstrom, in setting forth his hypothetical to the vocational expert. Instead, the ALJ apparently adopted the findings of consultative psychiatrist, Dee E. Wright, Ph.D., who did nothing more than review Ms. Giles' medical records. See Tr. at 16; Tr. at 265. It has long been established that "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998). Generally, a consulting physician's opinion is not considered substantial evidence, especially if contradicted by a treating physician. Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir.2004). The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. See 20 C.F.R. § 404.1527(d)(2). Whether the ALJ gives great or small weight to the opinions of treating physicians, the ALJ must give good reasons for giving the opinions that weight. Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir.2001). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir.2001).
"Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir.2000) ("These assessments alone [of non-treating physicians] cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician.") Id. (citing Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir.1991)); Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir.1998) ("If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.").
A review of the record reveals that Daniel Ekstrom was the only mental health professional to actually examine Ms. Giles, though he did not "treat" her for any mental health issues. Ekstrom conducted a comprehensive examination of Ms. Giles and made detailed findings regarding the impact of her medical and emotional condition on her ability to function. Yet, Ekstrom's opinion was obviously discredited by the ALJ, although no reasons for doing so appear in the ALJ's decision. This was error. Reeder v. Apfel, 214 F.3d 984, 989 (8th Cir.2000) ("We conclude that the ALJ erred by making his own estimate of Ms. Reeder's IQ level, absent any support in the medical evidence *943 and without specifically discrediting the estimate of the sole mental health examiner in this case."). When Ekstrom's findings regarding Ms. Giles' work-related abilities, i.e., very poor ability to carry out instructions, maintain attention, concentration, and pace were incorporated into the hypothetical posed to the vocational expert, he testified that Ms. Giles would be precluded from any employment. (Tr. 62). The ALJ's determination that Ms. Giles was not disabled is not supported by substantial evidence.

ALJ's Credibility Determination
Ms. Giles argues the ALJ erred in finding her not credible. Ms. Giles argues that the ALJ improperly interpreted her low earnings record to mean that she was unmotivated to work, when the record as a whole supports a contrary finding. Ms. Giles also takes issue with the handful of inconsistencies and instances of medical noncompliance noted by the ALJ in rendering his judgment regarding her credibility, and the ALJ's findings that her daily activities were inconsistent with an allegation of total disability.
The Commissioner responds that the ALJ properly evaluated the credibility of Ms. Giles' subjective complaints and correctly determined that she had a residual functional capacity (RFC) that was consistent with the ability to perform other work. The Commissioner contends that the ALJ's credibility determination is supported by substantial evidence in the record, and that the ALJ considered each of Ms. Giles' alleged impairments.
When evaluating the credibility of a claimant's subjective complaints, the ALJ may not disregard them "solely because the objective medical evidence does not fully support them." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). "The [ALJ] is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Id. In evaluating claimant's subjective impairment, the following factors are considered: (1) the applicant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Id. at 1321-22. Subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir.1994); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993). Where an ALJ seriously considers but for good reasons explicitly discredits a plaintiff's subjective complaints, the court will not disturb the ALJ's credibility determination. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir.2001).
In assessing Ms. Giles credibility, the ALJ found her allegations to be less than fully credible and accepted her allegations only insofar as they are consistent with the determination that Ms. Giles is not disabled. (Tr. 26). In so determining, the ALJ found that: (1) Ms. Giles' activities of daily living are inconsistent with an allegation of total disability; (2) Ms. Giles has worked some since her alleged onset date; (3) There were inconsistencies between Ms. Giles' hearing testimony and medical records with respect to the date her headaches began, the amount of weight she had gained, and the number of visits to the emergency room for her headaches; (4) Ms. Giles' failed to stop smoking, when some of her impairments appear to be related to her smoking habit; (5) Ms. Giles' compliance with treatment and medication are questionable, namely her failure to pick up a prescription for medication in September 2000, her failure to take prescribed medicine regularly until a *944 week prior to a November 2000 doctor appointment, her failure to follow up on a referral to the UIHC headache clinic in July 2001, her self-discontinuation of cholesterol medication, her failure to complete an MRI scan ordered in August 2001, her refusal to take Depakote in August 2002 as recommended because she read it can cause hair loss, her failure to follow through on a doctor's prescription for physical therapy in July 2003, and her refusal to have surgery in an effort to ameliorate her headaches; and (5) Ms. Giles modest and uneven work history. (Tr. 25-26). The court will address these issues in turn.
At the hearing, Ms. Giles testified that her 14 year-old daughter does the housework, but that she can do some cooking when she is feeling good and not having a migraine headache and that she does the laundry sitting down. (Tr. 51-52). She further testified that her 14 year-old daughter helps the seven year-old child with homework when Ms. Giles is having a migraine, that she makes sure that her two children go to school every day, and that she goes to their school activities when she is not having a migraine. (Tr. 45, 55). When she is having a migraine, she testified that she does nothing but lie still and go to the emergency room for a shot. (Tr. 42). She testified that the migraine headaches make her nauseous and have caused her to black out, and that the medications she takes for her headaches make her drowsy, but have not helped in any manner. (Tr. 42-43, 57). After taking the medication, which she does twice a day, Ms. Giles testified that she has to lie down for a couple hours. (Tr. 43).
It is true that Ms. Giles is able to participate in some daily activities on days when she is not suffering from a migraine headache. However, "a claimant need not prove that he or she is bedridden or completely helpless to be found disabled." Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989). See also Keller v. Shalala, 26 F.3d 856, 859 (8th Cir.1994) (finding it error to discredit the claimant's subjective complaints of pain based on her daily activities which consisted of watching television, taking care of her dogs, and doing household chores, which claimant testified she could not do when she was suffering from a disabling headache); Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir.2004) ("We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has `the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'") (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). The limited daily activities Ms. Giles is able to engage in, when she is not experiencing a migraine headache, do not support a finding that her allegations are not credible.
Likewise, the fact that Ms. Giles has worked some since her alleged onset date does not support the ALJ's credibility determination. Ms. Giles testified that she lost her job with the Waterloo School System due to excessive absenteeism related to her migraine headaches. (Tr. 40). This testimony stands unrefuted. Ms. Giles' unsuccessful attempt to hold a job and support her children while her disability application was pending does not make her subjective complaints less credible.
The court finds that the ALJ has either misstated or inflated the import of the alleged inconsistencies between Ms. Giles' hearing testimony and her medical records. For example, Ms. Giles testified at the hearing that her headaches began in 1985 after she had a bad fall. (Tr. 41). The ALJ's written decision erroneously *945 states that Ms. Giles stated that her headaches first started in 1995. (Tr. 23, 25). Ms. Giles' hearing testimony is therefore not inconsistent with her September 2001 report to Dr. Christiason that she had been having headaches for as long as she can remember. (Tr. 25). In fact, it was entirely consistent with what she reported to Dr. Thomas Mulakkan on October 24, 2000. (Tr. 161-62). Similarly, the medical records and Ms. Giles' testimony regarding her weight gain over the last three to four years varies somewhat, but Ms. Giles' weight appears to have fluctuated over the years and is not the basis of her disability claim.
Finally, a review of the record indicates that Ms. Giles visited the emergency room 14 times over a 18 month period (9-00 to 3-02), and visited various other urgent care facilities frequently as well. (Tr. 324). Ms. Giles testified that she has headaches daily, migraine headaches once or twice a month. (Tr. 42). When she experiences a migraine headache, she testified that she goes to the emergency room and gets a shot or something for the pain. (Tr. 42) Ms. Giles testified that her visits to the emergency room happened "like once a month" but then stated that her insurance company "started getting on" her about going there and told her to go to Convenient Care or go back to People's Clinic. (Tr. 56). The record, when reviewed as a whole, does not support the ALJ's finding that "[t]hese inconsistencies and exaggerations diminish the claimant's credibility as to her allegations of total disability." (Tr. 25).
The ALJ found that Ms. Giles' refusal to a smoking cessation program and failure to stop smoking militates against a finding of disability when "some of Ms. Giles' impairments appear to be related to her smoking habit." (Tr. 25). A review of Ms. Giles' medical records reveal that while she did, on one occasion, reject a referral to a smoking cessation program, there is nothing in the medical records indicating that any of her physicians have stated that her smoking was the cause of her problems or that her medical conditions would be relieved by quitting smoking. Under similar circumstances, the Eighth Circuit noted:
Although Kelley's cardiologist advised her to quit smoking, he did not state that her smoking was the cause of her problems or that her complaints would be relieved by quitting smoking. Although she would undoubtedly improve her general health and well-being by doing so, there is no evidence that her musculoskeletal complaints would be affected. Under the circumstances of this case, we are reluctant to deny benefits solely because of Kelley's failure to quit smoking.
Kelley, 133 F.3d at 589-90. Ms. Giles' smoking habit or her decision to decline the referral to the smoking cessation program do not diminish her credibility.
The ALJ also relied on Ms. Giles' alleged non-compliance with prescribed treatment and medication in discrediting her subjective allegations. (Tr. 25). In Ms. Giles' vast medical records, the ALJ found that she had failed to pick up a prescription for medication in September 2000, failed to take prescribed medicine regularly until a week prior to a November 2000 doctor appointment, failed to follow up on a referral to the UIHC headache clinic in July 2001, self-discontinued her cholesterol medication, failed to complete an MRI scan ordered in August 2001, refused to take Depakote in August 2002 as recommended because she read it can cause hair loss, failed to follow through on a doctor's prescription for physical therapy in July 2003, and refused to have surgery in an effort to ameliorate her headaches.
*946 Ultimately, the record reveals that Ms. Giles has tried every, or nearly every medication available in an effort to treat her headaches, but to no avail. That she was tardy in picking up or starting a prescription, having an MRI conducted, or taking physical therapy, when living on a shoestring budget consisting solely of public assistance and battling her insurance company for coverage, as she testified to in the hearing does not diminish her credibility. At the hearing, the ALJ explored little, if at all, into the reasoning behind any of Ms. Giles' alleged non-compliance, but found that it diminished her credibility nonetheless. Ms. Giles testified that she declined to have surgery because two of the three doctors she consulted advised her against it. (Tr. 53). A claimant's unwillingness to have brain surgery against the advice of two physicians can hardly be grounds for finding her not credible.
Ms. Giles' modest and uneven work history, as she testified to at the hearing, is the result of minimum wage jobs and her decision to spend eight years caring for her ailing mother. While it may raise doubts as to Ms. Giles' motivation to work, it is not determinative nor a sufficient basis upon which to find her not credible.
For the above reasons, the ALJ's determination that Ms. Giles is not fully credible is not supported by substantial evidence. Consequently, the ALJ's determination must be reversed.

Reversal or Remand
The scope of a district court's review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides, in part, that:
[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.
42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:
[w]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.
Gavin, 811 F.2d at 1201-02. See also Beeler v. Bowen, 833 F.2d 124, 127 (8th Cir.1987) (although there was no shift in the burden to the Secretary, reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability."); Stephens v. Secretary of Health, Educ., & Welfare, 603 F.2d 36, 42 (8th Cir.1979) (reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled).
In the present case, the court concludes that the medical records as a whole support Ms. Giles' subjective complaints regarding her migraine headaches. There were no medical records cited by the ALJ indicating that Ms. Giles' subjective complaints were overstated or not sincere. Furthermore, the vocational expert testified that if Ms. Giles, because of her medical condition, would require two or more absences from work per month and two or more breaks during the work day on an unscheduled basis for about a half an hour, then she would be precluded from competitive employment. (Tr. 62).
Additionally, it has already been noted by the court that the ALJ's finding discounting the opinion of Ms. Giles' examining psychologist is not supported by substantial evidence. Therefore, if Daniel Ekstrom's opinion regarding Ms. Giles' work-related abilities, i.e., very poor ability to carry out instructions, maintain attention, concentration, and pace were incorporated into the hypothetical posed to the *947 vocational expert, then Ms. Giles would be precluded from any employment. (Tr. 62).
Accordingly, the court finds that the record supports a finding of disability. This is based on the fact that if the opinion of Daniel Ekstrom had been given its due weight and included in the RFC relied upon by the ALJ and if the ALJ had properly considered Ms. Giles' credibility, she would have been found unable to be gainfully employed. Because a remand for "further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir.1984).
Upon the foregoing,
IT IS ORDERED that this matter is reversed and is remanded to the Commissioner of Social Security to award benefits.
NOTES
[1] The court's order dated April 26, 2005, did not contain all information intended. Accordingly, the court submits this revised order.